Windle TURLEY, Appellant,

v.

FLAG–REDFERN OIL COMPANY, Appellee.

No. 72408.

Supreme Court of Oklahoma.

Oct. 31, 1989.

**132**

Horace B. Watson, Jr., Janis W. Preslar, Oklahoma City, for appellant.

David Pepper, Linda G. Scoggins, Barbara L. Swimley, Oklahoma City, for appellee.

KAUGER, Justice.

The question presented by the appellee, Flag–Redfern Oil Company (Flag–Redfern), is whether surface owners have standing to appeal a Corporation Commission order. The issues presented by the appellant, Windle Turley (Turley/surface owner), are: 1) whether 52 O.S.Supp.1988 § 87.2 [1] is unconstitutional because it does not provide surface owners with notice and the opportunity to be heard in hearings on drilling and spacing applications; and 2) whether 52 O.S.Supp.1988 § 87.2 violates the Fourteenth Amendment [2] to the United States Constitution by creating a legislative scheme which treats those parties holding mineral interests or the right to drill differently from surface owners.

---

1. Title 52 O.S.Supp.1988 § 87.2 provides in pertinent part:

"A. Except as provided in subsection B of this section, only those persons, or the duly authorized agent, representative or attorney of those persons, who are mineral owners or owners of the right to drill a well for oil and gas on the lands embraced within the subject area of an application or the owners of correlative rights within the common source of supply or supplies embraced within an application to the extent such owners are directly affected by such application, shall be proper parties to:
1. protest any application to establish, reestablish, or reform a spacing unit,
2. protest any application requesting authority for an additional well or wells within an established spacing unit brought pursuant to the provisions of paragraph (a) or (d) of Section 87.1 of Title 52 of the Oklahoma Statutes, or
3. present testimony or evidence at any hearing arising thereunder or relating thereto.
B. No other person shall be entitled to notice of such proceeding or shall be entitled to

appear as a party of record therein, except that the Corporation Commission may permit persons other than those specified in subsection A of this section leave to intervene in a proceeding upon a finding, based upon clear and convincing evidence, that such person has a substantial right intended to be protected by Section 87.1 of Title 52 of the Oklahoma Statutes which may adversely be affected by the outcome of such proceeding. Any finding required by this section shall be made by the Corporation Commission, sitting en banc, within ten (10) days of the filing of a motion to intervene by such person and such proceeding shall be stayed during such ten-day period...."

2. U.S. Const. amend. XIV, § 1 provides in pertinent part:

"... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

We find that: 1) surface owners do not have standing as "persons aggrieved" within the meaning of 52 O.S.1981 § 113 [3] to appeal Corporation Commission orders; 2) because surface owners hold no interest which entitles them to protest applications to establish, reestablish, or reform drilling and spacing units, 52 O.S.Supp.1988 § 87.2 is not unconstitutional for failure to provide surface owners with notice and an opportunity to be heard at protest hearings; 3) the exclusion of surface owners from those parties entitled to protest drilling and spacing applications under 52 O.S. Supp.1988 § 87.2 does not violate equal protection; and 4) the surface owner's remedy is under the Oklahoma Surface Damages Act, 52 O.S.Supp.1982 § 318.2 et seq. The determination that surface owners do not have standing to appeal applications to establish, reestablish, or reform drilling and spacing units, and that 52 O.S.Supp. 1988 § 87.2 does not violate either due process or equal protection, makes a determination on the evidence presented in support of the motion to advance unnecessary.

## FACTS

Turley owns surface rights in Section 9, Township 15 North, Range 25 West (Section 9), Roger Mills County, Oklahoma. Turley does not own a mineral interest in any of the land involved in this action. Flag–Redfern is the owner of a right to drill a well to the Douglas Sands which underlies Section 9. Mewbourne Oil Company (Mewbourne) owns an oil and gas interest in Section 9.

On October 14, 1988, Flag–Redfern filed an application with the Corporation Commission in Cause CD No. 143770 requesting that the existing 640–acre gas well spacing for the Douglas Sands underlying Section 9 be vacated, and that 80–acre drilling and spacing units for the production of oil be

established. The hearing was set for October 3, 1988. Flag–Redfern appeared and requested a continuance. Turley and Mewbourne appeared to protest the application. Turley opposed the continuance and the hearing officer denied the motion to continue. Flag–Redfern dismissed its application. Eleven days later, Flag–Redfern refiled the application in Cause CD No. 146981. Turley was not given notice of the second spacing application.

On November 10, 1988, a prehearing conference was held before the hearing officer. Flag–Redfern appeared in support of its application and Mewbourne appeared to contest the application. The hearing on the spacing application was set on the Corporation Commission's protest docket for January 17–18, 1989. On November 23, 1988, Mewbourne filed a motion to advance the hearing. Mewbourne filed an amended motion to advance on November 30, 1988, which stated that Mewbourne was withdrawing its protest of the spacing application. The motion was set for hearing on the Commission's emergency docket.

On December 5, 1988, the hearing officer granted the motion to advance and heard the merits of the spacing application. The hearing officer recommended approval of Flag–Redfern's application. *On December 14, 1988,* the Corporation Commission entered Order No. 333344 which vacated the previous order establishing 640–acre spacing and established 80–acre drilling and spacing units in Section 9.

On December 9, 1988, Turley filed a motion to reopen Cause CD No. 146981. On December 14, 1988, he filed a motion to stay the effectiveness of Order No. 333344, establishing 80–acre drilling and spacing units. In both motions, Turley alleged that the proceedings on December 5, 1988, were treated as unprotested when both Flag–Redfern and Mewbourne knew that Turley

---

**3.** Title 52 O.S.1981 § 113 provides in pertinent part:

"In the manner now provided by law for taking appeals to the Supreme Court from orders, rules or regulations of the Commission affecting transportation and transmission companies, appeals may be taken to the Supreme Court from any order, rule or

regulation made, issued or promulgated by the Commission under the provisions of Sections 84–96, inclusive, of this title, (a) by the Attorney General, or (b) by the Conservation Attorney, or (c) by the Director of Conservation, on behalf of the state, or (d) by any person aggrieved by such order, rule, or regulation appealed from...."

opposed the spacing application. Turley also argued that he was entitled to notice of the December 5th proceedings, and that failure to give the proper notice rendered the spacing order void.

The hearing officer heard Turley's motion to reopen on December 14, 1988. The hearing was continued to allow Turley to present evidence of ownership of a mineral interest in Section 9 or to amend his motion to include an application to intervene. At the hearing on January 4, 1989, Turley's attorney appeared both for Turley and for Carl Allen (Allen), the holder of a mineral interest in Section 9. No evidence was presented to establish that Turley owned a mineral interest in Section 9 or that Allen had not received notice of the spacing application. Even if Turley had filed a motion to intervene pursuant to 52 O.S.Supp.1988 § 87.2(B), he would have been required to show that he had an interest intended to be protected by § 87.2 to prevail. Flag–Redfern filed a motion to dismiss on the ground that, as a surface owner, Turley was not entitled to notice of the drilling and spacing application under § 87.2 and Commission Rule of Practice 8–2.[4] The hearing officer recommended that the motion to reopen be dismissed because Turley had presented no evidence of ownership of a mineral interest in Section 9, and that he lacked standing to invoke the jurisdiction of the Corporation Commission.

On January 11, 1989, a hearing was held before the Corporation Commission *en banc* (Commission) to consider Turley's motion to stay the effectiveness of the spacing order and his appeal of the hearing officer's adverse ruling on the motion to reopen. Turley filed his appeal on January 13, 1989. On February 9, 1989, the Commission dismissed Turley's motion before the hearing officer and denied his motion to stay effectiveness of Order No. 333344. The Commission found that Turley, as a surface owner, lacked standing to protest the drilling and spacing application.

## I

### SURFACE OWNERS ARE NOT "PERSONS AGGRIEVED"

### WITHIN THE MEANING OF 52 O.S.1981 § 113

### WITH STANDING TO APPEAL CORPORATION COMMISSION ORDERS.

Flag–Redfern contends Turley lacks standing because he does not own an interest in the minerals underlying Section 9. Turley asserts that as a land owner, he has a personal stake in the Corporation Commission's actions making him a proper party to appeal the Commission's order.

■ A person need not be a party to an action before the Corporation Commission in order to have standing to prosecute an appeal from a Commission order.[5] Section 113 of Title 52 provides that "persons aggrieved" by a Corporation Commission order, rule, or regulation promulgated pursuant to §§ 84–96 are competent parties to prosecute an appeal from such order, rule, or regulation. Because the order Turley seeks to appeal was issued pursuant to a section of the conservation statutes embraced within the confines of § 113, he can establish standing by demonstrating that

---

**4.** *Corporation Commission Rule of Practice 8–2* (1985) provides in pertinent part:
 "DRILLING AND SPACING UNITS
 (a) Notice of hearing relating to drilling and spacing units shall be published one time at least fifteen (15) days prior to the hearing in a newspaper of general circulation published in Oklahoma City, Oklahoma, and in a newspaper of general circulation published in each county in which lands embraced in the application are located.
 (b) When an applicant proposes to establish, vacate, alter, modify, amend or extend a drilling and spacing unit in an area which includes, at the time the application is filed, a well commenced to or completed in the common source of supply sought to be spaced, the application and notice shall be served by the applicant no less than fifteen (15) days prior to the date of the hearing, by regular mail, upon each person or governmental entity having the right to participate in production from the proposed drilling and spacing unit, the existing drilling and spacing unit and the existing well...."

**5.** *Missouri–Kansas–Texas R.R. Co. v. State*, 712 P.2d 40, 42 (Okla.1985).

he is an aggrieved person within the meaning of the statute.

An aggrieved party is one whose pecuniary interest in the subject matter is directly and injuriously affected, or one whose right in property is either established or divested by the decision from which the appeal is prosecuted. To render a party aggrieved by the decision, its adverse effect must be direct, substantial, and immediate rather than contingent on some possible remote consequence or a mere possibility of an unknown future eventuality.[6] In order to meet the status required for standing, a party must have a "personal stake" in the litigation because of an actual or threatened distinct injury which has a causal connection between the alleged wrong and the actions challenged.[7]

The Commission's order could result in an eightfold increase in the number of oil wells, roads, and support facilities located on Section 9. Turley asserts that the increase in use along with destruction of the surface is sufficient to make him an "aggrieved party" within the meaning of § 113. This argument is unpersuasive because of the nature of the relationship between the surface estate and that of the mineral estate. Although the two estates may be of equal dignity for some purposes, the surface estate is servient to the dominant mineral estate for the purposes of oil and gas development.[8] Ownership of an oil and gas interest carries with it the right to enjoy that interest by entering and making reasonable use of the surface to explore and extract mineral deposits.[9] The right to enter the surface for exploration purposes is in the nature of a property right.[10] Additionally, all property is held subject to the valid exercise of the police power.[11] It has long been recognized that the state, in the exercise of its police power, may control the density of drilling to prevent waste and to protect correlative rights.[12]

Although the surface of the land does not constitute a less valuable resource to the State of Oklahoma than the mineral wealth which underlies it,[13] Turley purchased Section 9 subject to the outstanding rights held by those parties with an interest in the mineral estate. Therefore, Order No. 333344, increasing the number of wells which can be drilled on Section 9, did not divest Turley of any property right. From the time of purchase, Turley held an estate servient to the mineral estate and subject to the valid exercise of the police power.

**6.** *Shop and Swap Advertiser, Inc. v. Oklahoma Tax Comm'n,* 774 P.2d 1058, 1060 (Okla.1989); *Whitman v. Whitman,* 397 P.2d 664, 667 (Okla. 1964); *Love v. Wilson,* 181 Okl. 558, 75 P.2d 876, 878 (1938).

**7.** *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 41, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450, 462 (1976); *Seal v. Corp. Comm'n,* 725 P.2d 278, 283 (Okla.1986), *appeal dismissed,* 479 U.S. 1073, 107 S.Ct. 1265, 94 L.Ed.2d 126 (1987).

**8.** B. Walker, "The Evolving Dominance of the Surface Estate," 34 Inst. on Oil & Gas L. & Tax'n 123, 128 (1983); L. Sellers, "How Dominant is the Dominant Estate? or, Surface Damages Revisited," 13 Inst. on Oil & Gas L. & Tax'n 377–78 (1962); Annot., "What Constitutes Reasonably Necessary Use of the Surface of the Leasehold by a Mineral Owner, Lessee, or Driller under an Oil and Gas Lease or Drilling Contract," 53 A.L.R.3d 16, 25 (1973). See also, *Wellsville Oil Co. v. Carver,* 206 Okl. 181, 242 P.2d 151, 154 (1952).

**9.** *Ricks Exploration Co. v. Oklahoma Water Resources Bd.,* 695 P.2d 498, 503 (Okla.1984); *Cormack v. Wil–Mc Corp.,* 661 P.2d 525–26 (Okla.

1983); Comment, "The Constitutionality of the Oklahoma Surface Damages Act," 20 Tulsa L.J. 60–1 (1984). See also, 1 Kuntz, "Law of Oil & Gas," 83, 90, Ch. 3, § 3.2 (1987); 4 Summers, "Oil & Gas," 1–2, Ch. 21, § 652 (1962).

**10.** *Davis Oil Co. v. Cloud,* 766 P.2d 1347, 1349–50 (Okla.1986). See also, *Anschutz Corp. v. Sanders,* 734 P.2d 1290–01 (Okla.1987).

**11.** *Davis Oil Co. v. Cloud,* see note 10 at 1351, supra; *Anderson–Prichard Oil Corp. v. Corp. Comm'n,* 205 Okl. 672, 241 P.2d 363, 372 (1951), *appeal dismissed,* 342 U.S. 938, 72 S.Ct. 562, 96 L.Ed. 698 (1952).

**12.** *Wickham v. Gulf Oil Corp.,* 623 P.2d 613, 617 (Okla.1981); *Oklahoma Natural Gas Co. v. Choctaw Gas Co.,* 205 Okla. 255, 236 P.2d 970, 975 (1951); *Croxton v. State,* 186 Okl. 249, 97 P.2d 11, 16 (1939); *Patterson v. Stanolind Oil & Gas Co.,* 182 Okl. 155, 77 P.2d 83, 89 (1938), *appeal dismissed,* 305 U.S. 376, 59 S.Ct. 259, 83 L.Ed. 231 (1939); E. Kuntz, "Statutory Well Spacing & Drilling Units," 31 Okla.L.Rev. 344, 347 (1978).

**13.** See, *Davis Oil Co. v. Cloud,* note 10, supra.

■ Additionally, Turley's pecuniary interest in his property is protected. As a surface owner, he is entitled under the Surface Damages Act, 52 O.S.Supp.1982 § 318.2 et seq., to compensation for injury to his property. In *Davis Oil Co. v. Cloud,* 766 P.2d 1347, 1351 (Okla.1986), this Court examined the relationship between Oklahoma's conservation laws and the Surface Damages Act. The conservation laws were passed to protect the correlative rights of those parties owning an interest in minerals.[14] In *Davis,* we recognized that by passing the Surface Damages Act, the Legislature had acted to balance the conflicting rights of owners of the right to produce oil and gas and of surface owners. Under the Act, surface owners are provided a means of participating in a judicial procedure to determine losses suffered because of oil and gas mining operations.[15] Where injured parties have an alternative statutory remedy to claimed due process violations, procedural defects are cured by the remedy afforded.[16]

## II

BECAUSE SURFACE OWNERS HOLD NO INTEREST WHICH ENTITLES THEM TO PROTEST APPLICATIONS TO ESTABLISH, REESTABLISH, OR REFORM DRILLING AND SPACING UNITS, 52 O.S.Supp.1988 § 87.2 IS NOT UNCONSTITUTIONAL FOR FAILURE TO PROVIDE SURFACE OWNERS WITH NOTICE AND AN OPPORTUNITY TO BE HEARD AT PROTEST HEARINGS.

Under usual circumstances, a determination that Turley lacks standing to prosecute the subject appeal pursuant to § 113 would make a decision of the other issues presented unnecessary. However, this cause presents a novel circumstance. Turley attacks the constitutionality of 52 O.S.Supp. 1988 § 87.2 arguing that the statute denies due process and equal protection to surface owners. If Turley's arguments are meritorious, he should have been given notice and an opportunity to be heard at the drilling and spacing hearing. As a party, Turley would have standing to appeal the Commission's order. Therefore, a determination of the constitutional arguments presented is warranted.

Those parties entitled to protest applications to establish, reestablish, or reform drilling and spacing units are enumerated in subsection 87.2(A). The subsection provides that "(e)xcept as provided in subsection B of this section, only those persons, or the duly authorized agent, representative or attorney of those persons, who are mineral owners or owners of the right to drill a well for oil and gas on the lands embraced within the subject area of an application or the owners of correlative rights within the common source of supply ... shall be proper parties" to protest applications to reform spacing units. Subsection (B) provides for intervention by those parties who show by clear and convincing evidence that they have a substantial right intended to be protected by § 87.1.[17] Surface owners are not named as proper parties to protest a drilling and spacing application.

■ Due process requires adequate notice and a realistic opportunity to appear at a meaningful time and in a meaningful

**14.** *Tenneco Oil Co. v. El Paso Natural Gas,* 687 P.2d 1049, 1053 (Okla.1984); *Inexo Oil Co. v. Corp. Comm'n,* 628 P.2d 362, 364 (Okla.1981).

**15.** If neither private negotiations between the operator and the surface owner nor a report by appraisers is satisfactory to the surface owner, a jury trial may be requested. See, 52 O.S.Supp. 1987 § 318.5(E), providing in pertinent part: "The time for filing an exception to the report or a demand for jury trial shall be calculated as commencing from the date the report of the appraisers is filed ..."

**16.** See, *Blanchette v. Connecticut Gen. Ins. Corp.,* 419 U.S. 102, 156, 95 S.Ct. 335, 365, 42 L.Ed.2d 320, 361 (1974).

**17.** Not only did Turley not attempt to intervene until the hearing before the Corporation Commission *en banc,* no evidence was presented at any time during the proceedings to show that Turley had an interest intended to be protected by 52 O.S.Supp.1988 § 87.1.

manner.[18] However, one who has no interest may not insist on receiving notice.[19] Therefore, Turley's assertion that failure to afford surface owners notice of drilling and spacing applications brought pursuant to § 87.2 violates due process is dependent upon surface owners having an interest subject to protection. When Turley took title to the surface in Section 9, he did so with the knowledge that it was burdened with an outstanding mineral estate which was subject to the State's power to regulate development of oil and gas resources through the valid exercise of its police power. Section 87.2, providing actual notice only to those parties owning an interest in the mineral estate, does not invade any property right in the surface.[20] The rights of surface owners are protected by the Surface Damages Act which guarantees that oil and gas development is not undertaken at the expense of agricultural or other industries interested in surface development.[21]

### III

### THE EXLUSION OF SURFACE OWNERS FROM THOSE PARTIES ENTITLED TO PROTEST DRILLING AND SPACING APPLICATIONS UNDER 52 O.S.Supp.1988 § 87.2 DOES NOT VIOLATE EQUAL PROTECTION.

Turley asserts that § 87.2 violates the fourteenth amendment's guarantee to equal protection by creating three classes of individuals—two of which are entitled to either actual notice or notice by publication and a third class not entitled to notice or the right to participate in hearings protesting drilling and spacing applications. Flag–Redfern recognizes that § 87.2 distinguishes between different classes, i.e. owners of an interest in the minerals at issue and those parties with no such interest; however, it contends that the distinctions made are constitutionally permissible under the fourteenth amendment.

 There is a strong presumption which favors legislative acts. A statute will be upheld unless it is clearly, palpably, and plainly inconsistent with fundamental law.[22] In testing the validity of a state statute which differentiates in its treatment of one group compared with its treatment of another group against an equal protection attack, the statute will be upheld if the basis for the differentiation is neither arbitrary nor capricious, and bears a reasonable relation to the object to be accomplished.[23] The fourteenth amendment does not require that equal protection be measured by exact equality of classification.[24] It does require that the classification rest on real, not feigned differences; the distinction has some relevance to the purpose for which the classification is made; and

**18.** *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313–15, 70 S.Ct. 652, 656–57, 94 L.Ed. 865, 872–73 (1950); *Cate v. Archon Oil Co.,* 695 P.2d 1352, 1356 (Okla.1985).

**19.** *First Nat'l Bank v. Oklahoma Savings & Loan Bd.,* 569 P.2d 993, 997 (Okla.1977); 1 Merrill, "Merrill on Notice," 495, 534, Ch. 11, §§ 530–31 (1952). See also, *Short v. Kiamichi Area Vocational–Technical School Dist. No. 7.,* 761 P.2d 472, 474–75 (Okla.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1341, 103 L.Ed.2d 811 (1989) and —— U.S. ——, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989).

**20.** See, *Bell v. Phillips Petroleum Co.,* 641 P.2d 1115, 1120–21 (Okla.1982). The finding that Turley has no interest which entitles him to notice also comports with our finding that Order No. 333344, increasing the number of wells which can be drilled on Section 9, did not divest Turley of any property right.

**21.** *Davis Oil Co. v. Cloud,* see note 10 at 1351, supra.

**22.** *Black v. Ball Janitorial Serv., Inc.,* 730 P.2d 510, 512 (Okla.1986); *Reherman v. Oklahoma Water Resources Bd.,* 679 P.2d 1296, 1300 (Okla. 1984); *Kimery v. Pub. Serv. Co.,* 622 P.2d 1066, 1069 (Okla.1981).

**23.** *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985); *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501–02 (1970); *Texas Oklahoma Express v. Sorenson,* 652 P.2d 285, 289–90 (Okla. 1982).

**24.** *Norvell v. Illinois,* 373 U.S. 420, 423, 83 S.Ct. 1366, 1368, 10 L.Ed.2d 456, 459 (1963); *Kirk v. Bd. of County Comm'rs,* 595 P.2d 1334, 1336 (Okla.1979).

the different treatments are not completely disparately arbitrary.[25]

■ The exclusion of surface owners from those parties entitled to protest drilling and spacing applications under § 87.2 does not violate equal protection. The classification the Legislature chose to make in § 87.1 rests on a real and vital difference—ownership. Section 87.2 along with the Surface Damages Act is part of a consistent statutory scheme whereby the Legislature recognizes the rights of both surface and mineral owners at the point in time when their rights become significant. The statutes allow a balancing of each estate holder's rights so that one does not encroach upon the other.[26] Under § 87.2 only those parties with an interest in the mineral estate are entitled to protest drilling and spacing applications. The Legislature could rationally conclude that surface owners need not be included because of their lack of interest in the development of the natural resources at issue. They could also legitimately conclude that inclusion of the surface owner would result in protests over virtually any well drilled. These contests could thwart the statutory scheme for efficient development of oil and gas fields.

## CONCLUSION

The surface owner's remedy is under the Oklahoma Surface Damages Act, 52 O.S. Supp.1982 § 318.2 et seq. Turley does not have standing as an aggrieved party within the meaning of 52 O.S.1981 § 113. As a surface owner, he is not a competent party to prosecute an appeal from the Corporation Commission's order establishing 80–acre drilling and spacing units in Section 9. His pecuniary interest in the subject matter of the appeal has not been directly and injuriously affected, and no right to proper-

ty was either established or divested by the Commission's order.[27]

Because surface owners hold no interest which entitles them to protest applications to establish, reestablish, or reform drilling and spacing units, 52 O.S.Supp.1988 § 87.2 is not unconstitutional for failure to provide surface owners with notice and an opportunity to be heard at protest hearings.

The classification established by § 87.2 rests on a real and vital difference. It has relevance to the Legislature's attempt to provide for an efficient and effective system of managment for the State's oil and gas reservoirs. The different treatment of surface owners and owners of the mineral estate is not arbitrary. The difference in treatment of owners of the two estates—surface and mineral—is not a violation of the equal protection clause of the fourteenth amendment.

CORPORATION COMMISSION ORDER SUSTAINED.

HARGRAVE, C.J., and HODGES, LAVENDER, DOOLIN, ALMA WILSON, and SUMMERS, JJ., concur.

OPALA, V.C.J., and SIMMS, J., concur in result.

---

**25.** *Walters v. City of St. Louis,* 347 U.S. 231, 237, 74 S.Ct. 505, 509, 98 L.Ed. 660, 665 (1954); *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655, 1660 (1942); *Clegg v. Oklahoma State Election Bd.,* 637 P.2d 103, 105 (Okla.1981); *Kirk v. Bd. of County Comm'rs,* 595 P.2d 1334, 1336–37 (Okla.1979).

**26.** *Davis Oil Co. v. Cloud,* see note 10 at 1351, supra.

**27.** The determination that surface owners do not have standing to appeal a protest brought pursuant to 52 O.S.Supp.1988 § 87.2 is in accord with our decision in *May Petroleum, Inc. v. Corp. Comm'n,* 663 P.2d 716–17 (Okla.1982), holding that only parties which have an interest in or the right to drill for oil and gas may invoke the jurisdiction of the Corporation Commission for the purpose of ordering an additional well at an excepted location under § 87.1.