OSCN Found Document:REVOLUTION RESOURCES v. ANNECY

 

 
 

 
 REVOLUTION RESOURCES v. ANNECY
2020 OK 97
Case Number: 118708
Decided: 11/24/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 97, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

REVOLUTION RESOURCES, LLC, Plaintiff/Appellee,
v.
ANNECY, LLC, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY

HONORABLE JUDGE SUSAN C. STALLINGS 

Â¶0 The Appellee filed a Petition to Appoint Appraisers in an action under the Oklahoma Surface Damages Act related to its oil and gas operations on the Appellant's surface estate. The Appellant unsuccessfully sought a temporary injunction against Appellee's operations. Appellant appealed the interlocutory order denying its motion for temporary injunction. This Court granted an injunction pending the appeal. Appellant was required to post a bond securing the cost and attorney fees of the Appellee if we should hold the temporary injunction granted by this Court should not have been granted. Upon review of a developed record, this Court affirms the trial court's order denying the motion for temporary injunction, we dissolve the temporary injunction granted by this Court, and remand for further proceedings to determine the costs and attorney fees owed the Appellee which are secured by the bond.

ORDER OF THE TRIAL COURT AFFIRMED; TEMPORARY
INJUNCTION DISSOLVED; CASE REMANDED FOR FURTHER
PROCEEDINGS

Michael J. Blaschke, Michael J. Blaschke, PC, and Rachel Lawrence Mor, Rachel Lawrence Mor, PC, Oklahoma City, OK, for Defendant/Appellant

John M. Krattiger, Nicholas V. Merkley, and Jay P. Walters, GableGotwals, Oklahoma City, OK, for Plaintiff/Appellee

COMBS, J.:

I. FACTS AND PROCEDURAL HISTORY

Â¶1 On February 18, 2020, the Plaintiff/Appellee, Revolution Resources, LLC, (Revolution), an oil and gas well operator, commenced this action under the commonly referred to, Oklahoma Surface Damages Act (SDA), 52 O.S. Â§Â§ 318.2 -- 318.9,[1] by filing a Petition to Appoint Appraisers. Revolution is engaged in the business of drilling, completion, and operation of oil and gas wells within the State of Oklahoma and serves as the operator in the oil and gas drilling operations on the subject premises:

Southwest Quarter (SW/4) Northeast Quarter (NE/4) of Section 9, Township 13N, Range 4W, Oklahoma County, Oklahoma.

In February 2018, Revolution acquired and became the operator of a 30,000 acre unit that was created in 1947 pursuant to Order 20212 of the Oklahoma Corporation Commission (OCC). The unit is known as the West Edmond Hunton Lime Unit (WEHLU). Order 20212 approved the creation of the WEHLU for the unitized management, operation and further development of the Hunton Lime formation oil and gas pool. The subject premises is located within the WEHLU. On June 13, 2018, Revolution filed with the Oklahoma County Clerk a Notice of West Edmond Hunton Lime Unit and Surface Rights. The Notice quoted, as follows, from the Plan of Unitization which Order 20212 approved:

XX.

RIGHTS OF WAY

The Unit shall have a servitude and right-of-way on, over and across all of the lands in the Unit Area for the purpose of laying, constructing, building, using and maintaining, operating, changing, repairing and removing pipelines, tanks, telegraph and telephone lines, water lines and other facilities for the development and operation of the Unit Area for oil and gas and for the gathering, handling and disposal of Unit Production; provided, the Unit shall pay all damages to growing crops, timber, fences, improvements and structures on the land resulting from the exercise of the rights and privileges granted to it in this section.

Exhibit "A" attached to the Notice contained the legal description of all lands covered under the WEHLU, which included all of Section 9 of Township 13 North, Range 4 West, Oklahoma County, Oklahoma.

Â¶2 The record reflects the Defendant/Appellant, Annecy, LLC, (Annecy) purchased the subject premises in August 2019.[2] Annecy purchased the land to build expensive luxury homes in the NE/4 of Section 9 of Township 13 North, Range 4 West, Oklahoma County, Oklahoma. The plat for this portion of land had been approved by the City of Oklahoma City (City) and Annecy received a permit to begin construction. Construction was set to begin on February 24, 2020. Annecy claims the subject premises was zoned (R-1) for single-family residential use only.

Â¶3 Revolution contacted Annecy in October 2019 to discuss its intent to drill an oil and gas well on the subject premises. An agreement between the parties was never reached. Revolution then pursued and received permits from the OCC and the City to drill on the premises in December 2019.[3] Pursuant to the SDA, Revolution served Annecy with its Notice of Intent to Drill on February 13, 2020.[4] As required by law, within five days of service of the notice Revolution attempted to continue good-faith negotiations with Annecy for a surface use agreement for any damages that might occur to the subject premises.[5] No agreement was reached and on February 18, 2020, Revolution filed its Petition to Appoint Appraisers and served a Ten Day Notice.[6] Title 52 O.S. 2011, Â§318.5, provides that "[o]nce the operator has petitioned for appointment of appraisers, the operator may enter the site to drill." On February 19, 2020, pursuant to this statute, Revolution entered the subject premises to begin construction of the well.

Â¶4 On February 24, 2020, Annecy filed a Special Appearance and Motion for Temporary Injunction/Restraining Order and Expedited Hearing. Annecy's two main arguments in support of its motion for extraordinary relief were: 1) Annecy would suffer irreparable harm if Revolution is allowed to drill on the subject premises,[7] and 2) Revolution was required under the City's Code[8] and state law[9] to procure a variance from the City's Board of Adjustment (BOA) prior to the City issuing the permits.[10] Because a variance hearing was never held nor was an order granting a variance made by the BOA, Annecy asserted it never received notice of a hearing and thus was not given an opportunity to be heard and object to Revolution's operations. Had such a hearing been held, Annecy stated they "reasonably believe[]" they would have prevailed in preventing Revolution from receiving a variance and drilling on the subject premises and therefore there was a likelihood they would have been successful on the merits of such a BOA variance hearing.

Â¶5 In response, Revolution notes there are no homes or homeowners on the subject tract and Annecy has not yet performed any substantial development work that would affect anyone other than Annecy's pecuniary interests. On the other hand, any delay to Revolution's drilling operations would cause a significant hardship to Revolution and others by causing standby and additional mobilization charges from the rig operator for releasing the rig, potentially cause the loss of the use of its rig to another operation, and causing the delay in payment of royalties to over 5,600 WEHLU mineral owners. Revolution further asserted, the SDA was specifically created by the Legislature to handle this very situation. It provides for money damages, i.e., legal relief, to surface estate owners for any potential harm they may suffer by the drilling operations; it does not provide for an injunction, i.e., equitable relief. Injunctive relief cannot be granted because Annecy suffers no irreparable harm. This is a business dispute over the value of surface land which will be determined by three appraisers pursuant to the SDA. It is nothing else. There is nothing special about the subject premises other than Annecy's desire to maximize its profit by developing it into luxury homes and selling them for the maximum amount possible.

Â¶6 Additionally, Revolution argued Annecy cannot show a likelihood of success on the merits. Annecy stated in its motion that it "reasonably believes" it would succeed on the merits of a BOA hearing. Revolution asserts such a BOA hearing is "hypothetical" due to recent changes in the law and the present action is under the SDA. The only success on the merits is pursuant to the SDA, i.e., Revolution will drill its well, the subject premises will be appraised, and Annecy will receive monetary compensation for damages to its surface estate. Further, a reasonable belief that one would succeed on the merits is not the required clear and convincing evidence of a "likelihood of success on the merits" needed to establish this element for a temporary injunction. Annecy cannot be successful on the merits of its stated goal of preventing Revolution from drilling on the subject premises. This goal is premised on the BOA denying Revolution's right to drill through refusing to issue a variance at a hearing that never occurred. Revolution argued that to the extent the City's Code bears upon these proceedings it has been preempted by a recently enacted law that dramatically diminished municipal powers over oil and gas operations.

Â¶7 In 2015, the Legislature enacted 52 O.S. Supp. 2015, Â§137.1 and repealed 52 O.S. 2011, Â§137.[11] The repealed Â§137[12] had for decades provided broad powers to political subdivisions to regulate oil and gas operations as follows:

Nothing in this act is intended to limit or restrict the rights of cities and towns governmental corporate powers to prevent oil or gas drilling therein nor under its police powers to provide its own rules and regulations with reference to well-spacing units or drilling or production which they may have at this time under the general laws of the State of Oklahoma.

It was replaced with Â§137.1 which provides:

A municipality, county or other political subdivision may enact reasonable ordinances, rules and regulations concerning road use, traffic, noise and odors incidental to oil and gas operations within its boundaries, provided such ordinances, rules and regulations are not inconsistent with any regulation established by Title 52 of the Oklahoma Statutes or the Corporation Commission. A municipality, county or other political subdivision may also establish reasonable setbacks and fencing requirements for oil and gas well site locations as are reasonably necessary to protect the health, safety and welfare of its citizens but may not effectively prohibit or ban any oil and gas operations, including oil and gas exploration, drilling, fracture stimulation, completion, production, maintenance, plugging and abandonment, produced water disposal, secondary recovery operations, flow and gathering lines or pipeline infrastructure. All other regulations of oil and gas operations shall be subject to the exclusive jurisdiction of the Corporation Commission. Provided, notwithstanding any provision of law to the contrary, a municipality, county or other political subdivision may enact reasonable ordinances, rules and regulations concerning development of areas within its boundaries which have been or may be delineated as a one-hundred-year floodplain but only to the minimum extent necessary to maintain National Flood Insurance Program eligibility. (emphasis added).

Revolution noted the Oklahoma Attorney General wrote a detailed opinion concerning the changes made in Â§137.1. The opinion found the enactment of Â§137.1 altered the shared regulatory structure over oil and gas regulation between the municipalities and the OCC. 2015 OK AG 12, Â¶Â¶4-5. With but a few exceptions, the OCC now enjoys exclusive jurisdiction over such regulation. Id., Â¶5. The statutory change limited local regulation to the areas specifically enumerated. Id., Â¶12. Localities no longer have the authority to enforce regulations that fall outside the powers specifically granted to them in Â§137.1. Id., Â¶21.

Â¶8 Revolution also asserted the City Code provides for the commencement of oil and gas operations to drill a well once a person has secured a permit. Citing City's Code of Ordinances, Article II, Â§37-38.[13] Revolution received permits from both the OCC and the City. To the extent Annecy believes some ordinance or provision has not been followed, its quarrel is with the City and its permitting procedures, not with Revolution. The City, not Annecy, is the one responsible for enforcing its ordinances.

Â¶9 On March 2, 2020, the district court held a hearing on Annecy's motion. At the hearing Annecy stated its desire is to enjoin Revolution from drilling while the court orders this matter back to the City to hold a variance hearing.[14] Annecy argued its intent is to stop Revolution from drilling on the subject premises, noting that there is nearby land that Revolution could drill upon.[15] Revolution asserted that "that's exactly what the problem is," Â§137.1 "clearly says you can't do anything to stop us from drilling a well where the [OCC] permits us to drill a well."[16] The court asked Annecy if it had spoken to the City about why it did not require a variance before issuing the permit.[17] Annecy responded that it had spoken to the City and since the passage of Â§137.1, the City said it "thought we had to get out of the business of variances."[18] Revolution suggested that Annecy's problem is with the City's interpretation of Â§137.1, and therefore it should sue the City to have a court determine whether or not its interpretation is wrong.[19] The court itself was not convinced Annecy was in the right place.[20] The court then asked Annecy what is the irreparable harm here, since the subject premises is "just a bunch of dirt."[21] Annecy agreed that at this stage the subject premises is just all dirt.[22] The irreparable harm Annecy argued is that it would not have purchased this property if it had known an oil and gas facility will be on the subject premises which would include increased truck traffic related to the well.[23] Revolution responded that this matter only concerns money. Annecy has a "big piece of dirt here" and "big plans to develop [it] to make big money;" "[i]t's a commercial investment."[24] The diminution in value to the property is a matter concerning money damages, it is not irreparable, and is precisely the type of action to be handled under the SDA.[25] The court agreed and concluded that Annecy had not proven irreparable harm at this stage and denied its motion for temporary injunction and restraining order.[26] The court filed its order on March 5, 2020.

Â¶10 On March 10, 2020, Annecy filed a Petition in Error in this Court to review the interlocutory order. See Okla.Sup.Ct.R 1.60-1.61. The following day, Annecy also filed a separate action for declaratory judgment in the district court.[27] This separate action names both Revolution and the City as defendants. It seeks an order determining Annecy's rights under the zoning and variance laws and requiring the City to comply with its obligations under those laws.

Â¶11 On March 10, 2020, and simultaneously with its Petition in Error, Annecy filed a Motion for Emergency Relief, requesting this Court grant a temporary injunction against Revolution while the issues raised on appeal can be resolved. Revolution responded to the motion on March 12, 2020. The issues raised by the parties were nearly identical to those raised before the district court. On March 13, 2020, this Court entered an order enjoining Revolution from drilling activities on Annecy's property pending further order of this Court. On March 16, 2020, Revolution filed a Motion for Bond on Temporary Injunction, wherein it claimed the injunction would cost $222,190.00 in damages and an additional estimated $35,000.00 in attorney fees. On March 30, 2020, this Court entered a second order issuing a temporary injunction enjoining Revolution from proceeding with its drilling activities on Annecy's property pending the appeal. However, the temporary injunction was conditioned upon Annecy posting a bond in the amount of $257,190.00. within 30 days of the order pursuant to 12 O.S. 2011, Â§1392. On May 4, 2020, Annecy filed a Bond for Temporary Injunction with this Court stating it had executed the bond on April 29, 2020.

II. STANDARD OF REVIEW

Â¶12 An injunction is an extraordinary remedy, and relief by this means is not to be lightly granted. Amoco Production Co. v. Lindley, 1980 OK 6, Â¶50, 609 P.2d 733. Matters involving the granting or denial of injunctive relief are of equitable concern. Edwards v. Bd. of Cty. Comm'rs of Canadian Cty., 2015 OK 58, Â¶11, 378 P.3d 54. To grant or refuse to grant an injunction is generally within the sound discretion of the trial court, and its judgment in refusing to grant an injunction will not be disturbed on appeal unless it can be said the court abused its discretion, or that the judgment rendered is clearly against the weight of the evidence. Johnson v. Ward, 1975 OK 129, Â¶42, 541 P.2d 182. See also O'Laughlin v. City of Fort Gibson, 1964 OK 31, Â¶12, 389 P.2d 506 (judgment of a trial court in an action of equitable cognizance will not be disturbed unless clearly against the weight of the evidence). An abuse of discretion occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling. Velasco v. Ruiz, 2019 OK 46, Â¶6, 457 P.3d 1014. "An abused judicial discretion is manifested when discretion is exercised to an end or purpose not justified by, and clearly against, reason and evidence. It is discretion employed on untenable grounds or for untenable reasons, or a discretionary act which is manifestly unreasonable." Patel v. OMH Medical Center, Inc., 1999 OK 33, Â¶20, 987 P.2d 1185, 1194. To obtain a preliminary injunction, a plaintiff must show that four factors weigh in his or her favor: 1) the likelihood of success on the merits; 2) irreparable harm to the party seeking injunction relief if the injunction is denied; 3) his threatened injury outweighs the injury the opposing party will suffer under the injunction; and 4) the injunction is in the public interest. Dowell v. Pletcher, 2013 OK 50, Â¶7, 304 P.3d 457. The right to injunctive relief must be established by clear and convincing evidence and the nature of the injury must not be nominal, theoretical or speculative. Sharp v. 251st Street Landfill, Inc., 1996 OK 109, 925 P.2d 546. An injury is irreparable when it is incapable of being fully compensated for in damages or where the measure of damages is so speculative that it would be difficult if not impossible to correctly arrive at the amount of the damages. Hines v. Indep. Sch. Dist. No. 50, Grant Cty, 1963 OK 85, Â¶14, 380 P.2d 943. It has been long settled that an injunction should not be granted or allowed where there is a full and adequate remedy at law. Marshall v. Homier, 1903 OK 84, Â¶3, 74 P. 368; See also, Indep. Sch. Dist. No.9 of Tulsa Cty. v Glass, 1982 OK 2, Â¶9, 639 P.2d 1233 ("[w]hen a remedy for any particular wrong or injury has been provided by statute, generally no redress can be afforded by injunction.") A temporary injunction should not be granted where the alleged contemplated injury is such as can be fully compensated in money damages. Marshal, Â¶3. 

III. ANALYSIS

Â¶13 This appeal concerns whether the trial court abused its discretion in denying Annecy's motion for a temporary injunction within an action filed under the SDA. The district court determined Annecy did not prove it would be irreparably harmed if extraordinary relief was not granted. We review that decision to determine if it was based upon an erroneous conclusion of law or there was no rational basis in evidence for the ruling. Upon appeal, this Court granted Annecy's motion for extraordinary relief only pending the appeal. After a review of a developed record, we conclude the district court did not abuse its discretion in denying Annecy's motion.

Â¶14 The district court ruled only on one of the four factors necessary to obtain a temporary injunction, i.e., irreparable harm. Because all four factors must be proven by clear and convincing evidence in order to obtain a temporary injunction, and the court ruled there was no irreparable harm, she denied the motion. Therefore, our analysis will focus on whether or not Annecy proved by clear and convincing evidence it would be irreparably harmed if a temporary injunction was not granted.

Â¶15 The underlying action is filed pursuant to the SDA. The SDA was enacted in 1982 to provide a mechanism for balancing the conflicting interests of the owners of two of our State's important natural resources, i.e., the mineral estate and the surface estate. Ward Petroleum Corp. v. Stewart, 2003 OK 11, Â¶5, 64 P.3d 1113. Although the two estates may be of equal dignity for some purposes, the surface estate is servient to the dominant mineral estate for the purpose of oil and gas development. Dulaney v. Oklahoma State Dept. of Health, 1993 OK 113, Â¶8, 868 P.2d 676; Turley v. Flag-Redfern Oil Co., 1989 OK 144, Â¶13, 782 P.2d 130. The purpose behind the SDA is to provide prompt payment of compensation to the surface estate owner for any losses suffered because of the oil and gas mining operations. Ward, Â¶5; Turley, Â¶15. Prior to the SDA, the oil and gas operator would be held liable for surface damages only if such damages resulted from wanton or negligent operations or if the operations affected a more than reasonable area of the surface. Ward, Â¶5; Davis Oil. Co. v. Cloud, 1986 OK 73, Â¶9, 766 P.2d 1347. That is no longer the case under the SDA which modified that common law rule. Ward, Â¶5. The SDA limits the damages recoverable to those which the surface owner has sustained or will sustain by reason of entry upon the land and by reason of drilling or maintenance of oil and gas production on the subject tract of land. 52 O.S. 2011, Â§318.5 (C); Ward, Â¶6. This Court noted that on several occasions we have held the damage standard intended by the Legislature under the SDA is the diminution in the fair market value of the surface property resulting from the drilling and maintenance operations. Ward, Â¶6. We held, this measure of damages is appropriate since the SDA "partakes of the nature of a condemnation action."[28] Id. Being as such, condemnation proceedings are not civil actions at law or suits in equity but rather are special statutory proceedings for the purpose of ascertaining the compensation to be paid for the property to be appropriated. Id.; See Curtis v. WFEC R.R. Co., 2000 OK 26, 1 P.3d 946; State Dept. of Highways v. O'Dea, 1976 OK 133, 555 P.2d 587. We determined the procedural requirements under the SDA are mandatory and under these proceedings only three pleadings are authorized, i.e., a petition seeking the appointment of appraisers, objection to the report of appraisers, and a demand for a jury trial. Ward, Â¶8.

Â¶16 Ownership of an oil and gas interest carries with it the right to enjoy that interest by entering and making reasonable use of the surface to explore and extract mineral deposits. Turley, Â¶13; Ricks Expl. Co. v. Oklahoma Water Res. Bd., 1984 OK 73, Â¶10, 695 P.2d 498 ("[t]he ownership of oil-and-gas carries with it by implication the means of enjoying the mineral estate.") The right to enter the surface for exploration purposes is in the nature of a property right. Dulaney, Â¶8; Turley, Â¶13. One who purchases land subject to the outstanding rights held by parties with an interest in the mineral estate is not divested of a property right by an OCC order increasing the number of wells which can be drilled on the property. Turley, Â¶14. The surface estate owner holds an estate that is servient to the mineral estate and subject to the valid exercise of the State's police power. Id. It has been long recognized that the State, in exercise of its police power, may control the density of drilling. Id., Â¶13. The surface estate owner's pecuniary interest in his or her property is protected under the SDA which will provide for compensation for injuries to the property. Id., Â¶15.

Â¶17 Annecy purchased its surface estate subject to the outstanding mineral estate held by Revolution. Annecy's surface estate is servient to that of Revolution's mineral estate. The damages asserted by Annecy all relate to the diminution in the fair market value of its surface estate that it has either sustained or will sustain from Revolution's drilling and maintenance operations. The SDA provides a full and adequate remedy in the law to fully compensate Annecy in money for such damages. A temporary injunction is not appropriate under these circumstances. Annecy did not meet its burden of proving by clear and convincing evidence that it would be irreparably harmed by Revolution's oil and gas operations. Having failed to establish one of the four factors required, i.e., irreparable harm, by clear and convincing evidence, Annecy did not meet its burden to prove all necessary factors to obtain extraordinary relief, therefore its motion for temporary injunction was correctly denied. There was a rational basis in the evidence for the district court's order denying the temporary injunction and it clearly was not an abuse of discretion. Accordingly, we affirm the district court's denial of Annecy's motion for temporary injunction.

Â¶18 In addition, Annecy asserts it was denied due process because it was never given notice and an opportunity to be heard at a variance proceeding before the City's BOA. This argument was presented in regard to one of the four factors for a temporary injunction, i.e., the likelihood of success on the merits. Annecy claimed it believed it would succeed at a BOA variance hearing if one had occurred. They claimed the result of such variance proceeding would be to deny Revolution a variance to drill on Annecy's property. Revolution argued 52 O.S. Supp. 2015, Â§137.1 prohibits that very result. Annecy asserted at the temporary injunction hearing that in its conversations with the City, the City no longer requires a variance hearing on oil and gas operations before granting a permit to drill due to the enactment of Â§137.1.

Â¶19 In the present SDA action, the district court did not make a ruling concerning Annecy's right to a variance proceeding or what impact Â§137.1 has on variance proceedings. The court only ruled that Annecy had not proven it would be irreparably harmed by Revolution's oil and gas operations. Likelihood of success on the merits is but one of the four factors necessary to be proven for such extraordinary relief. The issue of whether due process was denied does not relate to the present action under the SDA. The evidence supports due process was afforded in this SDA action.[29] Annecy's argument about being denied due process is aimed at a BOA variance hearing, not the SDA action, and Revolution argued such variance proceedings are now preempted under Â§137.1.

Â¶20 Annecy filed, and there remains pending, a declaratory judgment action in the district court to determine its right to a variance proceeding.[30] The resolution of that matter will largely hinge upon what effect Â§137.1 has on variance proceedings concerning oil and gas operations. Both Revolution and the City, unlike the present case, are parties to that action. The issue concerning what right, if any, Annecy has to a variance proceeding and thus whether due process was denied is not ripe for this Court to hear until there is an appeal of a final judgment of the district court deciding that issue.

Â¶21 For the same reasons we affirm the district court's order denying a temporary injunction, we find the temporary injunction granted by this Court pending appeal, which was secured by a bond, should not have been granted. The temporary injunction issued by this Court is dissolved and the matter concerning what costs and attorney fees were incurred by Revolution and secured by the bond is remanded to the district court for further proceedings.

ORDER OF THE TRIAL COURT AFFIRMED; TEMPORARY INJUNCTION DISSOLVED; CASE REMANDED FOR FURTHER PROCEEDINGS

Â¶22 Gurich, C.J., Darby, V.C.J., Kauger, Winchester, Edmondson, Combs, Kane and Rowe, JJ., - concur.

Â¶23 Colbert, J., - not participating.

FOOTNOTES

[1] The Oklahoma Surface Damages Act was created in 1982 Okla.Sess.Laws c. 341 (H.B. 1460), eff. July 1, 1982. The Act does not include a short title naming it the Oklahoma Surface Damages Act but it has been commonly referred to in that manner or just as the Surface Damages Act.

[2] Transcript of the Proceedings, March 2, 2020, at 6.

[3] Revolution received a permit from the City to drill the well name "Winterfell 1304 09-21 #1BH" issued December 31, 2019. See Ex. 5, Plaintiff's Response to Defendant's Motion for Temporary Injunction/Restraining Order filed February 28, 2020, CV-2020-381, District Court of Oklahoma County, Oklahoma. In January 2020, Revolution sought to amend the permit on this well (permit no. "Well-2019-00023") in order to move the surface hole location/pad site by less than 500 feet, which was approved by the City in February 2020. Id.

[4] Title 52 O.S. Supp. 2013, Â§318.3 provides:

Before entering upon a site for oil or gas drilling, except in instances where there are non-state resident surface owners, non-state resident surface tenants, unknown heirs, imperfect titles, surface owners, or surface tenants whose whereabouts cannot be ascertained with reasonable diligence, the operator shall give to the surface owner a written notice of his intent to drill containing a designation of the proposed location and the approximate date that the operator proposes to commence drilling.

. . . .

Within five (5) days of the date of delivery or service of the notice of intent to drill, it shall be the duty of the operator and the surface owner to enter into good faith negotiations to determine the surface damages.

[5] Id.

[6] Title 52 O.S. 2011, Â§318.5 provides in pertinent part:

A. Prior to entering the site with heavy equipment, the operator shall negotiate with the surface owner for the payment of any damages which may be caused by the drilling operation. If the parties agree, and a written contract is signed, the operator may enter the site to drill. If agreement is not reached, or if the operator is not able to contact all parties, the operator shall petition the district court in the county in which the drilling site is located for appointment of appraisers to make recommendations to the parties and to the court concerning the amount of damages, if any. Once the operator has petitioned for appointment of appraisers, the operator may enter the site to drill.

B. Ten (10) days' notice of the petition to appoint appraisers shall be given to the opposite party, either by personal service or by leaving a copy thereof at the party's usual place of residence with some family member over fifteen (15) years of age, or, in the case of nonresidents, unknown heirs or other persons whose whereabouts cannot be ascertained, by publication in one issue of a newspaper qualified to publish legal notices in said county, as provided in Section 106 of Title 25 of the Oklahoma Statutes, said ten-day period to begin with the first publication.

[7] In their motion, Annecy asserts the subject premises, consisting of almost 160 acres, is in the process of development as a luxury housing community. Allowing Revolution to drill a well on approximately 4 acres of this property, including construction of a road for the drilling and long-term servicing of the well, would eliminate several home tracts currently included in the final plat and diminish the desirability of all the home tracts, in particular, those in the west side of Annecy's property.

[8] Annecy quotes from the City's Code of Ordinances, Article II, Â§37-39 (a)(8), which concerns applications for permits to drill and operate wells. This section provides in pertinent part:

(a) Every application for a permit to drill and operate an original well or to re-enter and operate an abandoned well shall be in writing and signed by the applicant or by some person duly authorized to sign on his behalf, and it shall be filed with the inspector and be accompanied by a nonrefundable application fee in the amount established in Chapter 60, the General Schedule of Fees. The application fee shall be paid by cashier's check. The permittee shall pay an additional nonrefundable operating permit fee in the amount established in Chapter 60, the General Schedule of Fees, when the drilling permit is approved and accepted, and this payment shall also be in the form of a cashier's check. The applicant shall submit two copies of the application and all required documents. The application shall contain full information as required by the inspector, including the following: 

. . . .

(8) if the proposed well is located outside of the boundaries of the Oil and Gas District or U-7 Zone, the applicant shall also submit a certified copy of the order by the Board of Adjustment of the City or a certified copy of the journal entry of judgment which grants such applicant the right to drill the well at the proposed location. (emphasis added)

[9] Annecy cites 11 O.S. Â§44-108, which requires notice of a public hearing to be mailed by the clerk of the BOA to property owners within a 300 foot radius of the subject property, at least 10 days prior to a hearing. It provides in pertinent part:

A. Notice of public hearing before the board of adjustment shall be given by publication in a newspaper of general circulation in the municipality where the property is located and by mailing written notice by the clerk of the board of adjustment to all owners of property within a three hundred (300) foot radius of the exterior boundary of the subject property. A copy of the published notice may be mailed in lieu of written notice; however, the notice by publication and written notice shall be published and mailed at least ten (10) days prior to the hearing.

Sections 44-101 through 110 of Title 11 of the Oklahoma Statutes, concern municipal boards of adjustment. Section 44-101 requires a municipality, when it is exercising zoning powers conferred by 11 O.S. Â§43-101 through Â§43-109, to provide by ordinance for the appointment of a board of adjustment. Section 44-104, grants a board of adjustment the power to hear oil and gas applications and appeals unless prohibited throughout a municipality by municipal ordinance. Its pertinent provisions are as follows:

The board of adjustment shall have the power to:

. . . .

4. hear and decide oil and/or gas applications or appeals unless prohibited throughout a municipality by municipal ordinance. The board of adjustment shall be required to make the findings prescribed by Section 44-107 of this title in order to grant a variance as to use with respect to any such application or appeal.

Exceptions and/or variances may be allowed by the board of adjustment only after notice and hearing as provided in Section 44-108 of this title. The record of the meeting at which the variance or special exception was granted shall show that each element of a variance or special exception was established at the public hearing on the question, otherwise said variance or special exception shall be voidable on appeal to the district court. (emphasis added).

Section 44-107, concerns variances. It provides:

A variance from the terms, standards and criteria that pertain to an allowed use category within a zoning district as authorized by the zoning ordinance may be granted, in whole, in part, or upon reasonable conditions as provided in this article, only upon a finding by the board of adjustment that:

1. The application of the ordinance to the particular piece of property would create an unnecessary hardship;

2. Such conditions are peculiar to the particular piece of property involved;

3. Relief, if granted, would not cause substantial detriment to the public good, or impair the purposes and intent of the ordinance or the comprehensive plan; and

4. The variance, if granted, would be the minimum necessary to alleviate the unnecessary hardship.

[10] Annecy attaches as an exhibit to its motion Table 59-6100.1, Oklahoma City Code of Ordinances, Use 8450.2, Mining and Processing: Oil and Gas. Annecy claims the subject premises are zoned R-1, single family residential. The attached table indicates for "Mining and Processing: Oil and Gas" a variance is required for every type of zoning listed in the table, including R-1.

[11] 2015 Okla.Sess.Laws c. 341 (SB 809).

[12] Section 137 was enacted in 1935 and had never been previously amended.

[13] This section provides:

No person shall commence operations to drill a well, or drill or produce a well, or conduct any natural or artificial production operations unless such person has secured a permit as provided by this chapter. This requirement shall apply whether such well is located within the Oil and Gas District or U-7 Zone or is located outside of such drilling zone but is authorized to be drilled and produced by operation of law. This section shall never be construed to enlarge the Oil and Gas District or U-7 Zone nor to grant the right to drill, produce or operate a well where the right to do so is not fixed by operation of law.

[14] Transcript of the Proceedings held March 2, 2020, at 5, 17.

[15] Id., at 12-13.

[16] Id.

[17] Id., at 15.

[18] Id.; The City is not a party to this SDA action, nor did anyone testify on behalf of the City.

[19] Transcript of the Proceedings held March 2, 2020, at 21.

[20] Id., at 15.

[21] Id., at 16.

[22] Id., at 17.

[23] Id., at 16-17.

[24] Id., at 20.

[25] Id., at 20-21. Revolution's lawyer also accused Annecy's injunction to be nothing more than a "stickup" because they wanted more than what Revolution was willing to pay "a week ago." Id., at 8. He stated further that "[t]hey were totally willing to accept money" but the "parties are about four to eight-hundred thousand dollars apart." Id. Annecy's lawyer denied that the purpose of the injunction was a "stickup." Id. at 13.

[26] Id., at 24.

[27] CV-2020-597, District Court, Oklahoma County, Oklahoma. The matter was transferred to Judge Stallings by Civil Docket Transfer Order on September 2, 2020.

[28] The Ward Court determined this is because Â§318.5 (F) of the SDA provides, "[t]he trial shall be conducted and judgment entered in the same manner as railroad condemnation actions tried in the court."

[29] In addition, in Turley v. Flag-Redfern Oil Co., 1989 OK 144, 782 P.2d 130, surface owners challenged an order of the Oklahoma Corporation Commission establishing drilling and spacing units because they were not given notice and an opportunity to be heard. We noted under 52 O.S. Supp. 1988, Â§87.2, only parties owning an interest in the mineral estate are required to receive actual notice. Id., Â¶18. Our holding determined the surface owners are protected under the Surface Damages Act, and where injured parties have an alternative statutory remedy to claimed due process violations, procedural defects are cured by the remedy afforded. Id., Â¶Â¶15, 18. See also Turley v. Mewbourne Oil Co., 715 F. Supp. 1052, 1055 (W.D. Okla. 1989), aff'd, 904 F.2d 43 (10th Cir. 1990); Blanchett v. Connecticut Gen. Ins. Corp., 419 U.S. 102, 156, 95 S.Ct. 335, 365, 42 L.Ed.2d 320, 361 (1974).

[30] See note 27, supra.