WESTERN HEIGHTS INDEPENDENT SCHOOL DISTRICT v. STATE
2022 OK 79
Case Number: 120034
Decided: 10/04/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 79, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

WESTERN HEIGHTS INDEPENDENT SCHOOL DISTRICT NO. I-41 OF OKLAHOMA COUNTY and MANNIX BARNES, Superintendent, Petitioners/Appellants,
v.
THE STATE OF OKLAHOMA, ex rel., OKLAHOMA STATE DEPARTMENT OF EDUCATION, OKLAHOMA STATE BOARD OF EDUCATION, and JOY HOFMEISTER, State Superintendent of Public Instruction, Respondents/Appellees.

APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY

¶0 Petitioners, school district and superintendent of the school district, sought a declaratory judgment, temporary restraining order, and preliminary injunction. The Honorable Aletia Haynes Timmons, District Judge for the District Court of Oklahoma County, denied the requests for temporary restraining order and preliminary injunction. Petitioners filed an interlocutory appeal and motion to retain the appeal in the Supreme Court for appellate review. The Court granted the motion to retain. We hold the Superintendent failed to show a likelihood of success on the merits of his claim that a due process violation occurred, or a likelihood of success on the merits of his claim that his administrative remedy was inadequate, and failed to show he was entitled to a preliminary injunction. We hold the School District failed to show a likelihood of success on the merits on a claim the State Board lacked authority to place the school district on probation with a condition requiring an interim superintendent, and failed to show a likelihood of success on the merits of a claim the school district was entitled to an administrative individual proceeding prior to the school district being placed on probation, and school district failed to show it was entitled to a preliminary injunction.

DISTRICT COURT ORDER AFFIRMED

Jerry L. Colclazier, Colclazier & Associates, Seminole, Oklahoma, for Petitioners/Appellants.

Brad S. Clark, Lori Murphy, Telana McCullough, and Desiree Singer, Oklahoma City, Oklahoma, for Respondents/Appellees.

EDMONDSON, J.

¶1 Petitioners, a school district and the school district's superintendent, brought an action in a District Court to stop the Oklahoma State School Board from taking actions against the school district in the meetings of the Board. The Board continued with its meetings and petitioners filed requests for a restraining order, preliminary injunction, and declaratory judgment to prevent further State Board actions until both the school district and its superintendent obtained administrative individual proceedings. The District Court denied the petitioners' requests and they appealed. The State Board continued with its meetings, placed the school district on probation and required an interim superintendent as a condition of probation. We affirm the District Court.

I. Controversy in District Court

¶2 The Oklahoma State Board of Education wanted Western Heights Independent School District No. I-41 to appear at the Board's meeting on April 9, 2021. No one representing the District appeared at the April 9th meeting, and during the meeting the Board "adjusted the District's accreditation status to 'Accredited with Probation.'" Then on April 22, 2021, the District and its Superintendent, Mannix Barnes, filed a petition for a declaratory judgment in the District Court of Oklahoma County. Petitioners sought both declaratory and injunctive relief against the Board, the Oklahoma State Department of Education (OSDE), and the State Superintendent of Public Instruction.

¶3 Petitioners stated they "are entitled to judicial review of all the Respondents' decisions, pursuant to 75 O.S.§ 31825 O.S. § 314

¶4 Petitioners sought an injunction to prevent the respondents "from lowering or revoking the District's accreditation status until such time as the Respondents promulgate a fair procedure and policy for doing so." They also sought a judicial declaration that in administrative proceedings before the OSDE the defendants "violated the District's right of a fair and impartial adjudication, and have violated the due process rights of the Superintendent, by reaching decisions of great importance without standards, procedures and policies, and such decisions should be vacated and held for naught."

¶5 On June 24, 2021, the State Board of Education issued an "Emergency Order" based upon an "Application for Emergency Order to Summarily Suspend Teaching Certification" of Mannix Barnes. The conclusion of the lengthy order states in part: "effective immediately, the Oklahoma Teaching Certificate of Mannix Barnes is hereby suspended pending an individual proceeding for revocation or other action, effective August 2, 2021 or thereafter as determined by the State Board."

¶6 In July 2021, the petitioners filed a motion for temporary restraining order and preliminary injunction. They requested an order vacating the suspension of Barnes as Superintendent, and an order enjoining respondents from further action against the District or Superintendent unless authorized by the trial court.

¶7 On July 9, 2021, a hearing was held on the motion for a temporary restraining order and preliminary injunction. Counsel for respondents stated an emergency order had been entered on June 24th at a public meeting with reference to Mannix Barnes. Notice was sent by the respondents within three days after the June 24th meeting saying "a hearing will be scheduled on a revocation" "[s]o there is a hearing that will be held on the potential revocation of the District Superintendent's certificate."

¶8 The trial court referenced the statements by counsel for respondents and the following occurred during the hearing.

Court: And your testimony is, as counsel for the State Department of Ed. . . . And there is a hearing to be scheduled on the revocation of his, the Superintendent's license?

Response: That is all correct.

Court: So as we sit here today is the Superintendent still the superintendent of Western Heights?

Response: As far as I have been made aware, that is true. . . That [recent legislation] requires when an individual, includes the school district superintendent, is suspended by the State Board of Education, the District is required to put the person on suspended leave. . . .

Court: All right. And is that leave with pay or leave without?

Response: It is leave with pay.

The trial court continued its questioning and the State Board stated Barnes was entitled to a Loudermill hearing, but this hearing had not yet occurred.

Judge, the word "suspend" is nowhere in that statute [70 O.S. § 3-104

ROA 324, Tr. at p. 18. The trial judge then observed the statute [70 O.S. § 3-104

¶9 The parties and the trial judge again discussed the effect of Barnes's emergency suspension. Counsel for the State Board stated emergency suspensions with administrative leave are "with pay" and the persons suspended receive "the benefits that they're otherwise entitled until a [revocation] hearing has been held." Id. Tr. at 340. Counsel for Barnes responded and stated a suspension with pay and benefits was not in a letter sent to the school district, and "Not that it makes any difference, because when they tell Mr. Barnes he can't act as superintendent . . . that's the big harm there." Id. Barnes objected to the State Board considering the application for a summary emergency suspension during an executive session at the State Board's meeting.

¶10 The trial judge appeared to indicate Barnes was entitled to a hearing on the issue of license or certificate revocation, but not entitled to participation in a summary hearing which results in an emergency order of suspension when Barnes (1) continued to receive a salary and benefits after an emergency suspension, and (2) had an opportunity for an administrative hearing after the suspension.

¶11 The trial court denied the request for a temporary restraining order by a journal entry filed on August 6, 2021.

¶12 The trial court's journal entry denied the requests for a preliminary injunction and temporary restraining order. The order was filed November 19, 2021, and the court addressed individually each of petitioners' thirteen supplemental requests for relief. For example, when denying petitioners' first supplemental request: (A) The trial court determined respondents had authority to suspend Barnes's educator certificate; (B) Barnes was not entitled to a full evidentiary hearing prior to the emergency suspension, but Barnes was entitled to a hearing prior to a revocation of his certificate; and (C) The facts asserted in the emergency application to suspend and order of suspension were sufficient to demonstrate an emergency.

¶13 When addressing the first supplemental request for relief the court referenced several specific findings and one general finding referencing "other allegations" made by respondents concerning Barnes and the school district. The specific findings included: (1) The use/management of money including assertions "reflected in the 2019 and 2020 District audits and Barnes's testimony that he allowed things to go for a full year before making changes to what was found in the audits; (2) Child Nutrition Program services were impaired, "including a decision to cease provision of nutritional services to students;" (3) Fire services protection, "including the danger posed from February, 2021 to May 2021, the Oklahoma City Fire Department citation for noncompliance and the information reported by an employee with regard to these matters; (4) "Disharmony in community, parents' voices not heard by leadership;" (5) Significant loss of District personnel while Barnes was superintendent; and (6) District payroll, "Barnes may have inherited a system but he was a school board member and would have been informed and in favor of it." The trial court's order addressed an additional twelve supplemental requests for relief by petitioners which need not be repeated herein except as needed for our analysis of petitioners' assignment of error.

II. Appeal and Standard of Review

¶14 Petitioners appealed and filed a motion to retain the appeal in this Court for appellate review. Their motion to retain was granted. The trial court order brought for appellate review denied requests for a preliminary injunction and a temporary restraining order.

¶15 A temporary restraining order is one type of interlocutory order, and many interlocutory orders not subject to immediate appellate review may obtain appellate scrutiny upon appeal from a subsequent appealable order or judgment. 

¶16 A petitioner may assert similar legal claims for the remedies of a temporary restraining order and a preliminary injunction with a decision on the latter reviewed in an appeal. This may occur pursuant to 12 O.S. § 1384.112 O.S.2011 § 1384.1

¶17 Petitioners' petition in error states the appeal is appealable by right because the trial court's order denies a temporary or preliminary injunction.12 O.S.2011 § 952

¶18 Two sentences in the six-page trial court order state "petitioners' thirteenth enumerated supplemental request for relief has been previously adjudicated [and] this claim was denied and dismissed during the July 22, 2021, hearing on respondents' motion to dismiss." The request was a "declaratory judgment that the State Board executive sessions were unlawful under the Open Meeting Act." Petitioners' appellate brief-in-chief states the trial court previously dismissed Open Meeting Act claims, stated petitioners failed to exhaust administrative remedies when they failed to appear before a State Board meeting the previous April, and denied the motion to dismiss with respect to claims against the OSDE and petitioners' request for declaratory judgment. One result of this procedure is that the trial court did not finally dispose of all claims at this point because, as indicated by petitioners, claims remained pending in the trial court.

¶19 On August 13, 2021, petitioners filed a Supplemental Motion for Preliminary Injunction, and Brief in Support.

¶20 We construe meaning of statements in the trial court's order based upon plain and consistent language expressed in the context of the purpose sought to be accomplished by the order, while giving effect to every word with the consequences that follow the necessary legal implications of its terms; and we apply a meaning consistent with parts of the judgment roll properly before us.

¶21 The multiple specific requests by petitioners for a "declaratory judgment" were denied in the context of the trial court denying a motion for a preliminary injunction. This Court does not review an order denying a request for summary judgment.12 O.S.2011 § 1651

¶22 Generally, a preserved issue of law brought for appellate review receives de novo review.

¶23 All this means we review the trial court's denials of supplemental requests for "declaratory judgment" to such extent they may be construed as findings of fact and conclusions of law within a context of a request for preliminary injunctive relief. We may not expand our review of the trial court's findings and conclusions and turn them into a review on the merits beyond the equitable standard of "likelihood of success on the merits" as petitioners' appellate request for relief appears to suggest. This Court does not make first-instance determinations of disputed issues of either law or fact in the exercise of its appellate jurisdiction,

¶24 The standard of review for an order denying an injunction is whether there was an abuse of discretion by the trial judge,de novo appellate review.

¶25 We recently have explained what petitioners must show in the trial court to obtain a preliminary injunction.

To obtain a preliminary injunction, the plaintiffs must show that four factors weigh in their favor: (1) the likelihood of success on the merits; (2) irreparable harm to the parties seeking injunctive relief if the injunction is denied; (3) their threatened injuries outweigh the injury the opposing party will suffer under the injunction; and (4) the injunction is in the public interest.

Owens v. Zumwalt, 2022 OK 14

III. Issues and Analysis

¶26 Petitioners raised several assignments of error in a petition in error. They filed appellate briefs in this Court and their assignments of error preserved for review are those in an appellate brief-in-chief with supporting authority.

¶27 Petitioners' arguments on appeal are divided between those for the school district and those for Barnes. The school district's principal brief argues: (1) The district must receive an administrative individual proceeding pursuant to the Oklahoma Administrative Procedures Act prior to "any sanctions, takeover, change of accreditation or other punitive actions against the district;" (2) No statutory authority exists for the OSDE "to take over and/or operate a local district, conduct an 'intervention,' or employ or appoint a local school superintendent;" and (3) The Oklahoma Constitution prohibits the State Board from exercising their adjudicative authority outside of an individual proceeding.

¶28 Barnes's principal brief argues: (1) The OSDE denied Barnes's constitutionally protected due process rights

III(A). Barnes's Due Process Claim

¶29 We address Barnes's due process claim before addressing claims made by the school district.

¶30 For some courts, an entity's power to revoke or remove a person's status granted by a permission, approval, certificate, or license from the entity also usually includes a lesser implied power of suspension when (1) the suspension is temporary and preliminary to, and integrated with, an authorized procedure for removal, and (2) the implied power of suspension has not been withdrawn by statute or constitution. For example, in 1909 this Court noted a split of authority in courts at that time and came to the following conclusion concerning a power to remove an official from office and a lesser included power to suspend.

[W]e feel constrained to adopt and follow that rule which appears to us will be more conducive to the administration of justice and the protection of the public against delinquent and corrupt office holders, and to hold that the power to remove for cause, after a hearing only, includes the power to suspend temporarily pending such hearing.

Maben v. Rosser, 1909 OK 211103 P. 674Rose v. Arnold, 1938 OK 44582 P.2d 293Maben and observed: "This Court is committed to the view that the power to suspend does exist by implication." Then two decades after Rose in State ex rel. Livingston v. Maxwell, 1960 OK 122353 P.2d 690

¶31 In State ex rel. Livingston we also observed "one who claims that said authority is not vested with the power of suspension under the general rule of implication, has the burden of establishing his said claim."Maben, Rose, and State ex rel. Livingston are similar to a licensing authority suspending a license pending a hearing on a revocation of the license.

¶32 A state administrative agency has implied powers in addition to the powers expressly granted when such implied powers are necessary for the due and efficient exercise of the express powers.

¶33 The trial court relied on 75 O.S. §§ 31470 O.S. §§ 1-10575 O.S. § 314

(C)(2). If the agency finds that public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined.

75 O.S.2011 § 314

As authorized by or pursuant to law, if an agency finds that the public health, safety, or welfare imperatively requires emergency action, has promulgated administrative rules which provide for such action and incorporates a finding regarding the emergency in its order, emergency actions may be ordered pending the final outcome of proceedings instituted pursuant to this article.

75 O.S.2011 § 314.1

¶34 The trial court also relied on 70 O.S. §§ 1-105

6. Have authority in matters pertaining to the licensure and certification of persons for instructional, supervisory and administrative positions and services in the public schools of the state subject to the provisions of Section 6-184 of this title, and shall formulate rules governing the issuance and revocation of certificates for superintendents of schools, principals, supervisors, librarians, clerical employees, school nurses, school bus drivers, visiting teachers, classroom teachers and for other personnel performing instructional, administrative and supervisory services, but not including members of boards of education and other employees who do not work directly with pupils . . . .

70 O.S.Supp.2013, § 3-104

¶35 The Okla. Admin. Code § 210:1-5-6, provides for "suspension and/or revocation of certificates," and states its application and authority for "governing suspension and revocation of certificates apply to the following: superintendents of schools, principals, supervisors, librarians, school nurses, school bus drivers, visiting teachers, classroom teachers and other personnel performing instructional, administrative and supervisory services in the public schools." § 210:5-1-6(a). It also contains the following provision.

(e) Emergency Action. Pursuant to 75 O.S. § 314

OAC § 210:1-5-6(e) (2020). This language in OAC § 210:1-5-6 appearing in paragraphs (a) & (e) was in effect on the date of the emergency application and emergency order suspending Barnes's certificate.70 O.S.Supp.2013 § 3-104

¶36 We discern legislative intent in statutes by examining the plain and unambiguous language expressed.75 O.S. §§ 31470 O.S. §§ 1-105

¶37 We also note current statutory authority recognizing a suspending power connected with a revoking power and the State Board's review of a teacher's certificate.

A teacher whose certificate was suspended by the State Board of Education pursuant to Section 3-104 of this title and Sections 314 and 314.1 of Title 75 of the Oklahoma Statutes shall be placed on suspension pursuant to the provisions of Section 6-101.29 of this title while proceedings for revocation or other action are pending before the State Board of Education. The provisions of this subsection shall not preclude the initiation of due process procedures in accordance with Section 6-101.20 et. seq of this title.

70 O.S.Supp.2020 § 6-101after the emergency suspension of Barnes's certificate on June 24, 2021, and is not a necessary element to our holding. However, this language does show a current legislative intent on this issue, and we note our conclusions are consistent with this recently enacted statutory language.

¶38 Barnes argued in the trial court the application for emergency suspension was not a suspension but a revocation because (1) a "revocation" was mentioned in the emergency application and (2) the State Board lacked authority for suspending a certificate. The trial court disagreed and read the State Board's administrative application as one for an emergency summary suspension in a proceeding where the State Board was also seeking a revocation with an opportunity for Barnes to appear at a hearing on a future date. We agree with the trial court. The authority cited by the trial court is sufficient to support the trial court's conclusion Barnes had failed to show a likelihood of success on the merits of his claim asserting the State Board lacked the authority to suspend his certificate.

¶39 The second prong of Barnes's due process argument concerns his lack of an opportunity to turn the hearing on the emergency summary application into a "full and fair hearing" on all of the claims raised against him. Barnes sought preliminary injunctive relief to provide him an administrative individual proceeding with sufficient notice to appear, argue, and present evidence prior to a "suspension." The State Board argued Barnes was not entitled to an opportunity for an evidentiary hearing in the context of an emergency summary application to suspend, but he was entitled to a full hearing at a later date on the State Board's application to revoke Barnes's certificate.

¶40 When this issue was argued in the trial court hearing, the opposing parties made different assumptions as to when Barnes was entitled to a hearing. Assuming Barnes had an interest protected by due process, the issue becomes when that interest is deprived by the administrative process. Barnes asserted the interest was deprived by the summary emergency hearing and its procedure, and Barnes's argument indicates any remedy he possesses after the summary hearing, e.g., a revocation hearing, is a post-deprivation remedy, and its adequacy measured by post-deprivation standards. However, the State Board indicated Barnes's due process interests were protected because he would receive a pre-deprivation remedy in the form of his revocation hearing after the emergency suspension, and this pre-deprivation remedy satisfied due process.

¶41 Thirty-four years ago in Short v. Kiamichi Area Vocational--Technical School District No. 7 of Choctaw County, 1988 OK 89761 P.2d 472Cleveland Board of Education v. Loudermill, supra, and explained "before a pretermination hearing is required, it must be demonstrated that there is an existing right in continued employment."Short and Loudermill require a cognizable legal interest possessed by Barnes which was taken or reduced by the summary emergency order.

¶42 If Barnes possesses an identifiable legal interest harmed by the summary emergency order, then we must determine if the process used was sufficient to protect that interest when Barnes's interest is weighed against the State's interest and a risk of an erroneous decision by the State when using the challenged procedure. We have explained the inquiry as "whether the individual possessed a protected interest to which due process protection applies and if so, whether the individual was afforded an appropriate level of process."

¶43 Barnes states he did not receive the proper three-day notice of the administrative suspension proceeding, but the authority he cites relates to a revocation proceeding and not a summary emergency suspension. The State Board states notice of the summary emergency application was provided by email to Barnes the day before the Board considered the emergency application, but the Board does not explain what this type of notice was attempting to accomplish in a constitutional sense. The trial court record shows Barnes received notice after the emergency suspension. Further, the trial court's order states with respect to the summary suspension: "The record indicates Barnes was given actual notice, including Barnes testifying that he received notice; thus his due process rights were not violated [and] Barnes's complaint regarding non-compliance with 75 O.S. § 314

¶44 A dialogue of the trial judge with counsel for both parties addressed identifying Barnes's legal interests which had been directly and adversely affected by the emergency suspension order and Barnes's remedy after the suspension hearing. Barnes's suspension was not for the purpose of suspending or ceasing payment of his salary and he continued to be a "superintendent." Barnes pointed to two interests which were affected by the emergency suspension (1) he was denied sufficient notice to give him an opportunity to present evidence and defend his reputation, and (2) he could not act as a superintendent due to being placed on administrative leave.

¶45 The U.S. Supreme Court has recognized interests other than a "mere loss of money" such as the risk of a party "having his reputation tarnished erroneously" due to a particular judicial procedure.

¶46 We need not hold that Barnes actually possesses the two asserted interests of reputation and continued decision-making in the context of the summary emergency proceeding. However, assuming for the purpose of Barnes's argument the two interests are protected in a present context by due process,

¶47 The trial judge discussed these principles during the hearing and her views were reflected in her subsequent order. The order states "Barnes is not entitled to an individual proceeding prior to the emergency suspension," "the Court finds there is an emergency demonstrated for the emergency suspension of the Certificate," and "Barnes is still entitled to the opportunity for a full and fair hearing prior to any revocation of the Certificate." Barnes's responses to these concepts in the trial court and also in his appellate brief are that the factual allegations made against him did not constitute "a legitimate emergency" and they were false.

¶48 The State Board's emergency order of suspension adopts assertions made in the application for a summary order. The order states the school district hired Barnes as superintendent in August 2019, and certain issues developed during his tenure. One was a violation issued in April 2021, by the Oklahoma City Fire Department which indicated a majority of the sprinkler system in a high school was nonfunctional, and this condition was known by the school district for more than sixty days prior to the citation.

¶49 Additional assertions include: The school district had chosen to suspend food services to children while schools were closed due to COVID-19 conditions while other schools in the state continued food service during closures; The school district resumed food services after "facing Department and Board intervention including potential accreditation and funding consequences; The school district "offered no in-person supports of any kind to students with disabilities" when needed due to COVID-19 closure; Staffing of special education teachers was impacted and "[Barnes] has fired the only severe/profound teacher we had at the high school without a replacement, he fired a deaf ed interpreter, and we have had at least one other special education teacher quit without any new hires;" "It is the Department's understanding that the District's current plan for delivering alternative education for at-risk students consists solely of requiring these students to use an online learning platform . . . without providing District teachers or the direct supports school districts are required to provide for alternative education students;" Emergency funds in the amount of $17,779,545.15 had been allocated to the school district "to make improvements and repairs to school facilities such as to ensure with fire code and sprinkler systems so as to protect the health and safety of persons entering school facilities . . . [t]his, however, Barnes failed to do;" Federal funds were made available "to reduce impacts of learning loss to students as a result of disruptions to learning caused by the pandemic, including extending the school year, increasing opportunities for learning, and increasing summer school programs . . . [a]gain, Barnes has not increased such services with the federal fund claims submitted [by the school district] to the OSDE."

¶50 Additional assertions include: The school district "objected to continuing to pay its support (non-certified) employees while public sites were closed due to the COVID-19 pandemic emergency, despite provisions in law authorizing and encouraging school districts to do so; Certified employees were allowed to use the 'snow days' due to severe winter weather but all support employees were required to report to work although no students were present;" "For the last two years, the District, under Barnes's leadership, is the only school district in the State of Oklahoma that collectively bargains with employees to not successfully negotiate employment agreements with the personnel bargaining unit in the school district," and "it is the Department's understanding that written teacher contracts for FY2021 were not executed by the District pursuant to 70 O.S. § 6-101

¶51 Additional assertions are: The OSDE began receiving communications from school district employees they were being denied access to certain accounts maintained by the school district through employee payroll deductions pursuant to state statute, these accounts were used by employees to pay for medical care, and they were denied access because "the accounts were in arrears;" Barnes "attributed all payroll problems concerning these accounts to the District's selected vendor" and he stated no corrective action was needed at that time; but "complaints and allegations regarding employee benefit accounts being in arrears have continued;" During Barnes's two years as superintendent "the District has sustained a staggering thirty-seven percent (37%) loss of staff;" and at the school district's June 14, 2021, meeting, the agenda shows twenty-one certified employee departures and one employee new hire.

¶52 Additional assertions are: "Under Barnes's leadership, the district has consistently had governance and financial issues, which according to an audit included numerous adjusting entries to the District's books in order to attempt to balance bank records," "checks cleared by adjusting entries done in batches and in several instances checks were cleared twice," transfers to Teacher Retirement Clearing Account not coded as general fund expenditures, Teacher Retirement System late penalties not properly coded, $169,006.80 in investment interest received and not coded as revenue, $144,837.97 of returned items needed reconciliation bank statements and an activity fund not properly balanced and kept up to date.

¶53 The State Board asserted upon an inquiry why certain programs and instruction were not being provided to students, "Barnes has misrepresented that funds available in the District have been reduced;" but the general operation funds available for 2019 were $33,296,487.76, and in 2020 an amount of $34,741,925.21, and federal COVID-19 emergency funds available to the district in 2020-2021 "add more than $17.5 million to the District's ordinary available fund totals."

¶54 Barnes states these reasons do not constitute an emergency. The State Board indicated the total weight of the circumstances shows Barnes's leadership failed to provide instruction and programs for students as required by law. Barnes requested a preliminary injunction, and a court sitting in equity exercises discretionary power in accordance with equitable principles and in light of all circumstances.

¶55 A totality-of-circumstances analysis for Barnes's requested judicial equitable relief includes not only the material presented for his emergency suspension before the State Board, but also the circumstances present in the equity proceeding itself. For one example, Barnes complains both his lack of an opportunity to immediately defend his public reputation and a post-suspension revocation hearing are inadequate to defend his reputation. However, Barnes brought this proceeding in the District Court a few months prior to the suspension and many of the same issues were part of either his petition or the motion to dismiss filed by the State Board in response to his petition. In other words, he complains he did not get an opportunity to publicly defend issues raised in the suspension application when he previously raised the issue of his conduct as part of a public record in this proceeding. Barnes is currently participating in a public district court proceeding with opportunities for him to raise issues and champion his prior conduct. The State Board also explained he possessed a remedy to champion his cause in a revocation hearing.

¶56 In Gilbert v. Homar, the U.S. Supreme Court assumed that an employee's temporary suspension of pay infringed a protected property interest.

¶57 In a unanimous decision by the Court, Gilbert noted if an employee receives a prompt post-suspension opportunity to be heard the deprivation of the due process interest will be minimal, and will be outweighed when a strong government interest is present, such as felony charge against an employee.

¶58 Barnes failed to show a likelihood of success on the merits of his claim that a due process violation occurred. Barnes failed to show an abuse of discretion by the trial court when he was denied a preliminary injunction.

III(B). Barnes's Exhaustion of Remedies

¶59 The trial court's order "finds that Barnes has failed to exhaust his available administrative remedies provided by the OAPA." The order also states "Barnes has the opportunity for a full and fair individual proceeding under the OAPA, that is the procedure available to him, he must use it to exhaustion." Barnes's appellate reply brief argues he may challenge an agency rule by declaratory judgment, and "if the question of substantive or procedural due process is raised, if there is a constitutional question that will remain no matter what the agency does, . . . if the appeals would be futile . . . or if the agency actions could cause irreparable injury to the party" then exhaustion is not required. He argues his administrative remedy would be ineffective or futile, and "revocation of the Superintendent's license . . . would constitute irreparable harm."

¶60 The authority relating to administrative exhaustion cited by Barnes is applied incorrectly in this controversy. Five years prior to Barnes filing his District Court action, we explained in Robinson v. Fairview Fellowship Home for Senior Citizens, Inc., 2016 OK 42371 P.3d 477Id. ¶ 10, 371 P.3d at 482.

¶61 Barnes states the allegations of fact made against him in the application for emergency suspension were not correct. The trial court indicated he can challenge the veracity of the allegations in a future administrative revocation hearing. An administrative hearing addressing facts relating to the instruction, educational programs, and finances of the school district and Barnes's participation in these allegations may be determined in an administrative context, and obviate the need for a District Court adjudication of a constitutional claim.

¶62 We recently discussed requiring exhaustion when the administrative proceeding could be used to develop the record of facts necessary for a constitutional challenge to an official's application of statutory authority, as opposed to a challenge based upon facial unconstitutionality of a statute.

¶63 Barnes has not shown an abuse of discretion by the trial court when it ruled he possessed an administrative remedy he had failed to exhaust, and he was required to exhaust that remedy by using an available revocation hearing before the State Board concerning his Teaching Certification.

¶64 Barnes failed to show a likelihood of success on the merits of his claim that his administrative remedy was inadequate.

III(C). Claims Asserted by School District

¶65 The school district challenged the authority of the OSDE and the State Board. The school district objected to the OSDE and State Board requiring school district representatives to appear before them and discuss concerns relating to the school district. The school district also challenged any exercise of authority by respondents resulting in a negative impact upon the school district unless the exercise of authority was pursuant to an Oklahoma Administrative Procedures Act individual proceeding. The school district's appellate brief argues: there are no statutory powers for the State Board to operate local school districts or carry out the duties of local boards of education.

¶66 Petitioners' petition in the District Court states the school district was placed "on probation," and attached a letter from the State Superintendent of Public Instruction and Chair of the State Board of Education. The letter stated the school district was assigned "accredited With Probation," and accredited status must be maintained to receive state funding. The letter explains that the school district has ninety days to successfully implement actions listed in the letter. The letter invites representation from the school district, specifically Superintendent Barnes, and a specified member of the school board to appear at a regularly scheduled State Board meeting six days after the date of the letter.

¶67 The supplemental motion for a preliminary injunction states that on July 12, 2021, the State Board had ordered a "full state intervention." The school district argues "There is no hierarchy as between the four entities," OSDE, State Superintendent of Public Instruction, local board of education of school districts, and superintendent of a local school district. In summary, the school district argues: "local boards of education [are] to run local school districts," a State Superintendent has no authority "to employ or appoint a local public school superintendent or any other employee," and "there are no statutory powers for a State Board to operate local school districts or carry out the duties vested in the local boards."

¶68 The school district's challenge to the authority of the OSDE relies upon an assertion of the OSDE's lack of statutory authority to act, and three opinions involving the school district. The school district argues it must receive an individual administrative hearing before it has any change to its status by the OSDE. The school district relies on Western Heights Independent School District No. I--41 of Oklahoma County v. State ex rel. Oklahoma State Department of Education, 2007 OK CIV APP 21156 P.3d 53Western Heights Independent School District No. I--41 v. State ex rel. Oklahoma Department of Education, 2007 OK CIV APP 92169 P.3d 417Western Heights Independent School District No. I--41 of Oklahoma County v. State ex rel. Oklahoma State Department of Education, 2011 OK CIV APP 33252 P.3d 284

¶69 In Western Heights Independent School Dist. No. I--41 of Oklahoma County v. State ex rel. Oklahoma State Department of Education, 2007 OK CIV APP 21156 P.3d 53

¶70 The school district's administrative appeal was denied because it was not "based on substantial or statistical criteria." The school district argued it was entitled to an Oklahoma Procedures Act Administrative proceeding. The OSDE disagreed. The trial court dismissed the district court petition because it was not filed within thirty days of the OSDE order, and this order was affirmed on appeal. The appellate court indicated the school district was entitled to an administrative individual proceeding,

¶71 School district argues the doctrine of "the law of the case" applies with Western Heights, 2007 OK CIV APP 21156 P.3d 53dicta and not applicable. Of course, dictaratio decidendi of a court's opinion;dicta is not binding as part of the law of the case,dicta, since the school district's use of the doctrine of the law of the case is not applicable for another reason.

¶72 The settled-law-of-the-case doctrine operates to bar relitigation of issues decided and involved by implication in a prior appellate opinion when occurring upon a record in the same case or controversy.

¶73 The OSDE is bound by the final judgments in Western Heights, 2007 OK CIV APP 21156 P.3d 53

¶74 A procedural due process right such as that raised by petitioners, is defined by, or identified with, the "precise nature" of the party's interest threatened by the State, and the "adequacy of the State's process" or specific procedure for deprivation of that specific interest.Western Heights, 2007 OK CIV APP 21156 P.3d 53

¶75 These principles are important to the controversy for two reasons: (1) A procedural due process violation is based upon the absence or inadequacy of State procedure for the legal interest,

¶76 The trial court stated the following findings and conclusions of law in its order with respect to the school district's challenge to the exercise of authority by the State Board and the OSDE.

. . . Pursuant to 70 O.S. §§ 1-10570 O.S. § 3-104

. . . Pursuant to 70 O.S. § 3-104

. . . The record is clear that Respondents did not adjudicate the District's accreditation status at the State Board's March 25, 2021 meeting. This is further made clear by the March 30, 2021 correspondence sent to the District, the correspondence between the parties from then, and is the very purpose of why the District and Barnes were invited to the April 9, 2021 meeting of the State Board. Barnes's testimony of having prior experience as a school board member and as a school superintendent led the Court to question the veracity of his claim to not understand the plain language of the minutes and notice he testified to receiving and reading. As to the documents relied upon at that meeting, the documents that were used during the meeting were publicly available or under the custody and control of the District. Petitioners did not offer any testimony that anyone outside of Barnes had difficulties accessing published documents. . . .

. . . Oklahoma law is clear that Respondents have statutory and constitutional authority to take the actions they have, follow the process they have, including to appoint or employ a superintendent or interim superintendent for the District, to operate the District and to conduct a full state intervention of the District if there is a factually supported basis. 70 O.S. §§ 1-105

¶77 The Oklahoma Constitution states: "The Legislature shall establish and maintain a system of free public schools wherein all the children of the State may be educated." Okla. Const. Art. 13 § 1. This Court has explained the Legislature "has plenary power to create, abolish or change school districts."70 O.S.2011 § 1-105

¶78 The trial court made a finding the school district and Barnes were invited to a meeting of the State Board to discuss the Board's concerns relating to the District. The school district and Barnes united in objecting to being invited to the State Board's meeting. In I.T.K. v. Mounds Public Schools, 2019 OK 59451 P.3d 125e.g., "a superintendent is a public day-to-day representative for the board of education," "a superintendent has a duty to implement the written policies of the board of education," and "a superintendent implements a policy sound in nature and functional for the management and operation of the district's business."

¶79 An additional role of a school superintendent is that of implementing a public policy which has been statutorily enacted with a State Board possessing a role supervising a local school district's (and superintendent's) implementation. The Legislature's determination of public policy by a statutory enactment is followed by the State Board of Education, and implemented by a local school district pursuant to the extent of supervision possessed by the State Board either express or implied.70 O.S. § 3-104

¶80 The Oklahoma Administrative Code has a provision stating if a school site is placed on warning or probation then representatives from the school "will meet" with state personnel prior to a report to the State Board. The OSDE references OAC § 210:35-3-201, which states as follows.

210:35-3-201. Statement of the standard

(a) Each public school site, including charter school sites, must submit an Application for Accreditation to the Accreditation Standards Section of the State Department of Education by the due date specified on the Application. School sites are accredited for one year. An accredited school site shall meet all applicable regulations and statutory requirements at the beginning of and throughout the school year.

(b) Accreditation status of school sites shall be classified according to the following categories:
(1) Accredited With No Deficiencies--All standards are being met.
(2) Accredited With Deficiencies--A school site fails to meet one or more of the standards but the deficiency does not seriously detract from the quality of the school's educational program.
(3) Accredited With Warning--A school site fails to meet one or more of the standards and the deficiency seriously detracts from the quality of the school's educational program.
(4) Accredited With Probation--A school site:

(A) consistently fails to remove or make substantial progress towards removing all deficiencies noted the previous year; and/or,
(B) consistently violates regulations; and/or,
(C) deliberately and unnecessarily violates one or more of the regulations.

(5) Nonaccredited--The school site is no longer recognized by the State Board of Education.
(c) If a school site is placed on warning or probation, the school board and administration will meet with one or more representatives from the Accreditation Section to review their accreditation status. After the review from the representative(s), a determination will be made concerning warning, probation or nonaccredited status. The Accreditation Section will then present a recommendation to the State Board of Education.

OAC § 210:35-3-201 (amended by 34 Okla. Reg. 1103, Sept. 11, 2017). An agency's administrative rule has the force and effect of law when properly created, its content is within the express or implied authority of the agency granted by statute, and the rule is consistent with Federal and State Constitutions.

¶81 The administrative rule works with 70 O.S.2011 §3-104

C. Except as otherwise provided, schools shall meet the accreditation standards as a condition of continued accreditation. Nothing herein shall be construed as preventing changes to the adopted standards by the State Board of Education pursuant to the Administrative Procedures Act. The accreditation standards shall provide for warnings, probation or nonaccredited status for schools that fail to meet the standards. The Department shall investigate a complaint of failure to provide educational services or failure to comply with accreditation standards within thirty (30) days of receiving the complaint. If the Department determines that a school has failed to comply with the accreditation standards, the Department shall report the recommended warning, probation or nonaccredited accreditation status to the State Board of Education within ninety (90) days. If a school does not take action to comply with the accreditation standards within ninety (90) days after a report is filed by the Department, the Board shall withdraw accreditation for the school. The State Board accreditation regulations shall provide for warnings and for assistance to schools and school districts whenever there is reason to believe a school is in danger of losing its state accreditation.

70 O.S.2011 §3-10470 O.S.2011 §3-104

¶82 When an elementary school district (a district with grades kindergarten through eight and not designated as independent) fails to satisfy accreditation standards, then the State Board of Education may issue an administrative order placing the district under full state intervention pursuant to the procedure in 70 O.S.2011 § 1210.543

D. If one or more school sites fail to receive accreditation as required pursuant to this section or subsequently lose accreditation, the State Board of Education shall close the school and reassign the students to accredited schools within the district or shall annex the district to one or more other districts in which the students can be educated in accredited schools.

A more general grant of authority is made stating the State Board "shall take action as required by this act to ensure that students affected are enrolled in schools that are able to maintain state accreditation." 70 O.S. § 3-104

¶83 Lesser included sanctions specified by statute include warnings and probation for a school district. For example, 70 O.S. § 3-10470 O.S.2011 §3-104

¶84 Petitioners argue there is no "hierarchy" in the relationship between State and local authority, so the State Board may not substitute a temporary and interim superintendent as a condition of the school district's probationary status without an express statutory authorization. The argument rests upon a theory similar to one we expressly rejected in 1947.

¶85 In School District No. 25 of Woods County v. Hodge, 1947 OK 220183 P.2d 575Woods County an "additional grant of power and authority apart from supervision of instruction" to change, alter, and annex local school districts could not be given to the State Board because the additional power was not within the scope of supervision of instruction. We rejected the argument.

¶86 We explained: "The Constitutional provision vesting the power of supervision of instruction in the Board of Education is not a limitation, but a grant of power." In Woods County a party argued the absence of a power to annex and alter school districts in Art. 13 § 5, meant such power could not be statutorily conferred on the State Board, and we rejected the argument. Petitioners argue there is an absence of express statutory language in Title 70 stating the State Board may require a temporary superintendent as a condition of probation. They argue this absence means the State Board may not impose an interim superintendent without the local school district's permission. We reject the argument.

¶87 Again, in I.T.K. v. Mounds Public Schools, supra, we explained the importance a superintendent has in a daily role to create a properly functioning school district. The State Board is given express powers to place a school district on probation and "shall take action as required by this act to ensure that students affected are enrolled in schools that are able to maintain state accreditation." When the State Board requires an interim or temporary superintendent as a necessary solution to preserve a school district's accreditation, then the State Board is exercising a necessarily implied and lesser power to effectuate a statutory mandate.

¶88 Petitioners failed to show a likelihood of success on the merits on their claim the State Board lacked authority to place the school district on probation with a condition requiring an interim superintendent.

¶89 The statutes and provisions of the administrative code raised by the parties provide procedures for probation and loss of accreditation, but do not provide for an administrative individual proceeding when the State School Board is providing a warning, or imposing a probation, or a loss of accreditation status. The preserved argument before the trial court was that the school district was put on probation with conditions, and the school district has a due process right not to be put on probation status without an administrative individual proceeding. The language in the statutes, including time limits for corrective relief and authority of the State Board, shows a high degree of authorized supervision by the OSDE and the State Board. This language appears to assume a local school district will work with State officials in implementing the interpretation of the legislative will made by the State Board instead of litigating the State Board's interpretation by requiring the State Board to satisfy a burden of proof in an individual proceeding. Not every action by a State agency is authorized by an order issued in an Oklahoma Administrative Procedures Act individual proceeding: "The Legislature recognizes that agencies take actions and make decisions, other than by individual proceedings for which the right to judicial review is intended to be exercised pursuant to other laws." 75 O.S.2011 § 308a

¶90 The power and authority placing the school district on probation status was pursuant to a statutory power granted the State Board by the Legislature. The State Board may not implement the legislative will by the exercise of power that is arbitrary and capricious, and judicial review of an arbitrary and capricious exercise of that power by respondents is not contingent upon the school district having a right to an individual proceeding.

¶91 A likelihood of success on the merits of a claim asserting a right to an individual proceeding and obtaining an injunction must be based upon a showing the rule and statutory procedure imposing the sanction on the school district are inadequate to protect a legal interest possessed by school district and that interest is legislatively intended to be protected by an administrative individual proceeding. This showing was not made in the trial court, and the scope of our holding on this point is limited to petitioners failing to make the required showing to obtain an injunction. Petitioners failed to show a likelihood of success on the merits of their claim they were entitled to an administrative individual proceeding prior to the school district being placed on probation.

IV. Conclusion

¶92 We hold the Superintendent failed to show a likelihood of success on the merits of his claim that a due process violation occurred, or a likelihood of success on the merits of his claim that his administrative remedy was inadequate, and failed to show he was entitled to a preliminary injunction.

¶93 We hold the School District failed to show likelihood of success on the merits on a claim the State Board lacked authority to place the school district on probation with a condition requiring an interim superintendent, and failed to show a likelihood of success on the merits of a claim the school district was entitled to an administrative individual proceeding prior to the school district being placed on probation, and school district failed to show it was entitled to a preliminary injunction.

¶94 The order of the District Court is affirmed.

¶95 ALL JUSTICES CONCUR.

FOOTNOTES

State ex rel. Oklahoma Bd. of Med. Licensure & Supervision v. Pinaroc, 2002 OK 2046 P.3d 114

75 O.S.2011 § 309

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Daffin v. State ex rel. Okla. Dep't of Mines, 2011 OK 22251 P.3d 741Loudermill held that a state legislature which conferred a property interest in employment, i.e., tenure for teachers, could not constitutionally authorize the deprivation of that interest without appropriate procedural safeguards.").

Andrew v. Depani-Sparkes, 2017 OK 42396 P.3d 210

Dopp v. Kirkendall, 2021 OK 52498 P.3d 287

Jennings v. Elliott, 1939 OK 55497 P.2d 6712 O.S.2011 § 1384.1Owens v. Zumwalt, 2022 OK 14

12 O.S. 2011 § 1384.1

Id., § 1384.1 (E), ("This section shall not apply to temporary restraining orders in actions for a divorce, alimony without a divorce, separate maintenance, an annulment, custody, or similar matters, guardianship or juvenile proceedings, or to proceedings brought pursuant to special statutes that provide alternate procedures for the obtaining of temporary restraining orders or temporary injunctions.").

But see, e.g., City of Midwest City v. Harris, 1977 OK 7561 P.2d 1357

12 O.S. Supp. 202012 O.S. §§ 952

12 O.S.2011 § 952

Kelsey v. Dollarsaver Food Warehouse of Durant, 1994 OK 123885 P.2d 1353Hicks v. Hicks, 1966 OK 91417 P.2d 830Timmons v. Royal Globe Ins. Co., 1985 OK 76713 P.2d 589

Edwards v. Andrews, 2016 OK 107382 P.3d 1045Progressive Direct Ins. Co. v. Pope, 2022 OK 4507 P.3d 688

Andrew v. Depani-Sparkes, 2017 OK 42396 P.3d 210House v. Town of Dickson, 2007 OK 57193 P.3d 964LCR, Inc. v. Linwood Properties, 1996 OK 73918 P.2d 1388

12 O.S.2011 § 1654Cf. Tulsa Indus. Auth. v. City of Tulsa, 2011 OK 57270 P.3d 113qui tam taxpayer is not entitled to intervene, has no right of action . . . and has no standing as a qui tam taxpayer to challenge a judgment on the merits of the justiciable controversy.").

Knight ex rel. Ellis v. Miller, 2008 OK 81195 P.3d 37212 O.S. §1651

12 O.S.2011 § 1651

District courts may, in cases of actual controversy, determine rights, status, or other legal relations, including but not limited to a determination of the construction or validity of any foreign judgment or decree, deed, contract, trust, or other instrument or agreement or of any statute, municipal ordinance, or other governmental regulation, whether or not other relief is or could be claimed, except that no declaration shall be made concerning liability or nonliability for damages on account of alleged tortious injuries to persons or to property either before or after judgment or for compensation alleged to be due under workers' compensation laws for injuries to persons. The determination may be made either before or after there has been a breach of any legal duty or obligation, and it may be either affirmative or negative in form and effect; provided however, that a court may refuse to make a determination where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding.

Macy v. Okla. City Sch. Dist. No. 89, 1998 OK 58961 P.2d 804

Indep. Sch. Dist. No. 52 of Okla. Cty. v. Hofmeister, 2020 OK 56473 P.3d 475cf. Shamblin v. Beasley, 1998 OK 88967 P.2d 1200Assessor of Roger Mills Cty. v. Unit Drilling Co., 2011 OK 4247 P.3d 1170

In re Guardianship of Berry, 2014 OK 56335 P.3d 779

Bailey v. State ex rel. Bd. of Tests for Alcohol & Drug Influence, 2022 OK 50510 P.3d 845

State ex rel. Okla. State Bd. of Med. Licensure & Supervision v. Rivero, 2021 OK 31489 P.3d 36

Crawford ex rel. C.C.C. v. OSU Med. Tr., 2022 OK 25510 P.3d 824In re Guardianship of Stanfield, 2012 OK 8276 P.3d 989

Scott v. Okla. Secondary Sch. Activities Ass'n, 2013 OK 84313 P.3d 891

Murlin v. Pearman, 2016 OK 47371 P.3d 1094

Johnson v. Ward, 1975 OK 129541 P.2d 182

In re Estate of Downing, 2021 OK 17489 P.3d 9In re Estate of Foresee, 2020 OK 88475 P.3d 862

Bowlin v. Alley, 1989 OK 66773 P.2d 365

Revolution Res., LLC v. Annecy, LLC, 2020 OK 97477 P.3d 1133

In re L.M.A., 2020 OK 63466 P.3d 559Lay v. Ellis, 2018 OK 83432 P.3d 1035In re Adoption of M.J.S., 2007 OK 44162 P.3d 211

Forest Oil Corp. v. Corp. Comm'n of Okla., 1990 OK 58807 P.2d 774Tulsa Indus. Auth. v. City of Tulsa, 2011 OK 57270 P.3d 113

State ex rel. Livingston v. Maxwell, 1960 OK 122353 P.2d 690Jones v. Bayless, 1953 OK 92255 P.2d 506cf. Burnap v. United States, 252 U. S. 512, 515, 40 S.Ct. 374, 64 L.Ed. 692 (1920) ("The power to remove is, in the absence of statutory provision to the contrary, an incident of the power to appoint . . . [and] [t]he power of suspension is an incident of the power of removal.").

Indep. Sch. Dist. No. 52 of Okla. Cty. v. Hofmeister, 2020 OK 56Farmacy LLC v. Kirkpatrick, 2017 OK 37

Id.

75 O.S. § 250.475 O.S. § 250.170 O.S. § 11-10375 O.S.§ 250.4

Estes v. ConocoPhillips Co., 2008 OK 21184 P.3d 518Coppola v. Fulton, 1991 OK 18809 P.2d 1291Rotramel v. Pub. Serv. Co., 1975 OK 91546 P.2d 1015

State ex rel. Okla. Dep't of Health v. Robertson, 2006 OK 99152 P.3d 875

Prettyman v. Halliburton, 1992 OK 63841 P.2d 573

Surety Bail Bondsmen v. Ins. Comm'r, 2010 OK 73243 P.3d 1177Lierly v. Tidewater Petroleum Corp., 2006 OK 47139 P.3d 897

Short, 1988 OK 89

Id. at 475.

Id.

In re A.M., 2000 OK 8213 P.3d 484

Purcell v. Parker, 2020 OK 83475 P.3d 834

Addington v. Texas, 441 U.S. 418, 424, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

Gilbert v. Homar, 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997).

See, e.g., Al-Khouri v. Okla. Health Care Auth., 2018 OK CIV APP 10419 P.3d 366Primas v. City of Oklahoma City, 958 F.2d 1506, 1510 (10th Cir. 1992) (explaining Melton v. City of Oklahoma City, 928 F.2d 920 (10th Cir. 1991) (en banc) cert. denied, 502 U.S. 906, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991) (a liberty interest claim exists when a public employer takes action to terminate an employee based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or associations in the community and foreclose the employee's freedom to take advantage of future employment opportunities)).

See, e.g., Okla. Sup. Ct. R. 1.11(j) ("Citations to a document in the record other than a transcript shall include the name of the document and the pages within the document to which reference is made (e.g., Petition at 17); and may include a description of the document.").

Berry & Berry Acquisitions, LLC v. BFN Props., LLC, 2018 OK 27416 P.3d 1061

District of Columbia v. Wesby, 583 U.S. ___, 138 S.Ct. 577, 588, 199 L.Ed.2d 453 (2018) ("The 'totality of the circumstances' requires courts to consider 'the whole picture.' . . . Our precedents recognize that the whole is often greater than the sum of its parts--especially when the parts are viewed in isolation."); Bourjaily v. United States, 483 U.S. 171, 179-80, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) ("[I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts.").

Gilbert, 520 U.S. at 929.

Id. at 931-32.

Id. at 935.

State ex rel. Okla. State Bd. of Med. Licensure & Supervision v. Rivero, 2021 OK 31489 P.3d 36

Western Heights, 2007 OK CIV APP 21156 P.3d at 55Patrick v. State Bd. of Educ., 1992 OK CIV APP 153842 P.2d 767

gratis dictum, simplex dictum, obiter dictum are often shortened to simply "dicta" in application. These terms refer to a statement, or remark, made in a judicial opinion when the content is not necessary or essential to the logic or reasoning used in the opinion to adjudicate the actual controversy then before the court. Dictum, Blacks Law Dictionary 541 (4th ed. 1951); Pierre N. Leval, Judging Under the Constitution: Dicta About Dicta, 81 N.Y.U. L. Rev. 1249, 1257-58 (2006) (Judge Leval's explanation for determining whether a statement is dicta).

In re Estate of Bleeker, 2007 OK 68168 P.3d 774ratio decidendi, and explaining it is a rule of law expressly or impliedly used by the judge as a necessary step in the reasoning to support adjudication of the controversy before the court).

Brokers' Choice of Am. v. NBC Universal, Inc., 861 F.3d 1081, 1099 n.15 (10th Cir. 2017) (citing Bishop v. Smith, 760 F.3d 1070, 1083 (10th Cir. 2014)); Arcam Pharm. Corp. v. Faria, 513 F.3d 1, 3 (1st Cir. 2007); cf. Am. Trailers, Inc. v. Walker, 1974 OK 89526 P.2d 1150

See, e.g., Indep. Sch. Dist. No. 54 of Lincoln Cty. v. Indep. Sch. Dist. No. 67 of Payne Cty., 2018 OK 34dicta and then explains it is not persuasive in controversy before the Court).

Cinco Enters., Inc. v. Benso, 1999 OK 80995 P.2d 1080Handy v. City of Lawton, 1992 OK 111835 P.2d 870

Branch Trucking Co. v. State ex rel. Okla. Tax Comm'n, 1990 OK 41801 P.2d 686

See, e.g., Salazar v. City of Oklahoma City, 1999 OK 20976 P.2d 1056Robinson v. Texhoma Limestone, Inc., 2004 OK 50100 P.3d 673City of Oklahoma City v. Robinson, 1937 OK 1665 P.2d 531Gille v. Emmons, 58 Kan. 118, 48 P. 569, 570 (1897) (A judgment upon a matter outside of the issues pled and tried of record must, of necessity, be altogether arbitrary and unjust, as it concludes a point upon which the parties have not been heard)); cf. Farley v. City of Claremore, 2020 OK 30465 P.3d 1213

Lehr v. Robertson, 463 U.S. 248, 256, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983).

2020 OK 67473 P.3d 467

Turley v. Flag--Redfern Oil Co., 1989 OK 144782 P.2d 130Blanchette v. Conn. Gen. Ins. Corp., 419 U.S. 102, 156, 95 S.Ct. 335, 365, 42 L.Ed.2d 320, 361 (1974))).

Tulsa Indus. Auth. v. City of Tulsa, 2011 OK 57270 P.3d 113Redbird v. Okla. Tax Comm'n, 1997 OK 126947 P.2d 525

Spencer Dev. Co. v. Indep. Sch. Dist. No. I-89, 1987 OK 70741 P.2d 477Tryon Dependent Sch. Dist. No. 125 of Lincoln Cty. v. Carrier, 1970 OK 153474 P.2d 131In re Wickstrum, 1969 OK 74454 P.2d 660Okla. Farm Bureau v. State Bd. of Educ., 1968 OK 98444 P.2d 182Hatfield v. Jimerson, 1961 OK 250365 P.2d 980

Okla. Farm Bureau v. State Bd. of Educ., 1968 OK 98444 P.2d 182Indep. Sch. Dist. No. 65 of Wagoner Cty. v. State Bd. of Educ., 1955 OK 301289 P.2d 379

Okla. Farm Bureau, 1968 OK 98

I.T.K., 2019 OK 59

Indep. Sch. Dist. No. 52 of Okla. Cty., 2020 OK 56Sch. Dist. No. 25 v. Hodge, 1947 OK 220183 P.2d 575

70 O.S.Supp.2013 § 3-104

"13. Have authority to require persons having administrative control of all school districts in Oklahoma to make such regular and special reports regarding the activities of the schools in said districts as the Board may deem needful for the proper exercise of its duties and functions. Such authority shall include the right of the State Board of Education to withhold all state funds under its control, to withhold official recognition, including accrediting, until such required reports have been filed and accepted in the office of said Board and to revoke the certificates of persons failing or refusing to make such reports."

Estes v. ConocoPhillips Co., 2008 OK 21184 P.3d 518Shop & Swap Advertiser, Inc. v. Okla.Tax Comm'n, 1989 OK 81774 P.2d 1058Daffin v. State ex rel. Dep't of Mines, 2011 OK 22251 P.3d 741

70 O.S.2011 § 3-104

Grisham v. City of Oklahoma City, 2017 OK 69404 P.3d 843Woods Dev. Co. v. Meurer Abstract, 1985 OK 106712 P.2d 30

Indep. Sch. Dist. No. 52 of Okla. Cty., 2020 OK 56

Indep. Sch. Dist. No. 52 of Okla. Cty., 2020 OK 56